271 F.2d 550
 59-2 USTC P 9750
 Ford A. KALIL and John Kalil, Petitioners-Respondents,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Petitioner,
COMMISSIONER OF INTERNAL REVENUE, v. Ford A. KALIL
and John Kalil.
 No. 17769.
 United States Court of Appeals Fifth Circuit.
 Nov. 10, 1959.
 
 Ellsworth T. Simpson, Washington, D.C., for petitioners.
 Charles K. Rice, Asst. Atty. Gen., Dept. of Justice, Arch M. Cantrall, Chief Counsel, Internal Revenue Service, John M. Morawski, Special Atty., Internal Revenue Service, Howard A. Heffron, Acting Asst. Atty. Gen., Dept. of Justice, Lee A. Jackson, Robert N. Anderson, Joseph Kovner, Attys., Dept. of Justice, Washington, D.C., for respondent.
 Before RIVES, Chief Judge, and TUTTLE and BROWN, Circuit Judges.
 TUTTLE, Circuit Judge.
 
 
 1
 This is a petition for review of a decision by the Tax Court that income tax deficiencies conceded to exist for years 1942, 1943 and 1944, were in part due to 'fraud with intent to evade tax' and that therefore the statute of limitation was tolled as to those years.
 
 
 2
 In the years in question the petitioners were partners in a liquor business in Live Oak, Florida. They operated five or six stores. They kept a single entry system of books which their part-time bookkeeper testified he told them was inadequate. The books were kept from information given to the bookkeeper by one of the partners who occasionally made entries himself in the absence of the bookkeeper. Tax returns for the first two years were made for a nominal fee by an outsider who obtained the figures for that purpose from one of the partners. For 1944 the returns were prepared by an accountant from the books and records of the partnership without any audit having been made. A reconstruction of the income for the years in question based on bank records, sales slips, interviews with customers and the like, showed deficiencies in the following amounts which for the purpose of this appeal are conceded by the taxpayers:
 
 
 3
 Year Correct Income Reported Income
1942 $ 19,414.94 $ 7,681.70
1943 37,228.20 13,363.44
1944 108,055.91 25,230.43
 
 
 4
 During the income tax investigation, Ford Kalil said to the agent that on account of their investment they couldn't make a commensurate profit on the 33 1/3% mark-up the O.P.A. allowed at that time, and that they therefore sold their liquor at over-ceiling prices.
 
 
 5
 The Tax Court found that the fraud section of the Code was applicable and that the limitation against collection of the tax was tolled. We affirm the decision of the Tax Court.
 
 
 6
 Appellant, relying almost exclusively on Tax Court opinions, pitches its case on statements frequently made by the Tax Court and the appellate courts to the effect that the burden of proving fraud is on the Commissioner; that proof of fraud must be clear and convincing; and that mere omission of reportable income is not of itself sufficient to warrant a finding of fraud in an income tax case. There is no doubt as to the correctness of all of these principles of law. They were all recognized by the Tax Court, which nonetheless found the evidence here sufficient according to these standards. In contending that a mere omission of reportable income is not of itself sufficient to warrant a finding of fraud, which we have announced as the law in Anderson v. Commissioner, 5 Cir., 250 F.2d 242, petitioners overlook the words mere and of itself. As we clearly implied in Bryan v. Commissioner, 5 Cir., 209 F.2d 822, and in the Anderson case, supra, the repeated omission of reportable income is not a mere omission. Moreover, an exceptionally large omission is not a mere omission.
 
 
 7
 'Repeated understatements in successive years when coupled with other circumstances showing an intent to conceal or misstate taxable income present a basis on which the Tax Court may properly infer fraud.' Anderson v. Commissioner, 5 Cir., 250 F.2d 242, 250.
 
 
 8
 Here the understatements were, as the Tax Court pointed out, over 100 per cent in 1942 and 1943, and over 200 per cent in 1944. The partners themselves made all the bank deposits in the seven different bank accounts they had or controlled. All the bank deposits represented receipts from the partnership business and the inadequate records did not reflect the amounts deposited in the bank accounts. Moreover, there is a further significant fact which may well have convinced the Tax Court that the partners actually knew what their true income was. It was admitted that sales were made for prices in excess of the O.P.A. prices established for the whiskey. The embarrassment which would normally result from entering on their books any excess of receipts over O.P.A. prices may well have accounted, in the opinion of the Tax Court, for the discrepancy between the book figures of receipts and the actual receipts. Beyond this, the partners showed an awareness of their true income status when they said that they knowingly embarked on a program of overceiling pricing because, on account of their investment, they couldn't make a commensurate profit on the 33 1/3% mark-up. The Tax Court could certainly infer that they had computed what profit they would make if they violated the law on ceiling prices and that they thus knew what their income actually was at the time that they were reporting less than half of it on their return.
 
 
 9
 We think it unnecessary to resolve the question whether the specific sale of a carload of whiskey was entirely omitted from the books, although the testimony may have been adequate to support such a finding. There is ample basis for affirming the Tax Court's finding of fraud without reference to the specific transaction.
 
 
 10
 Decision affirmed.