JOHN ADAM DANTE (formerly JOHN D. McDONALD), AND MARTHA N. DANTE (formerly MARTHA N. McDONALD), Petitioners v. COMMISSIONER OF INTERNAL REVENUE, RespondentDante v. CommissionerDocket No. 8969-72.United States Tax CourtT.C. Memo 1978-126; 1978 Tax Ct. Memo LEXIS 385; 37 T.C.M. (CCH) 556; T.C.M. (RIA) 780126; March 30, 1978, Filed W. Jere Blackshear and W. John Howard, for respondent. DAWSONMEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Pursuant to section 7456(c), Internal Revenue Code of 1954, and Rules 180 and 182, Tax Court Rules of Practice and Procedure, this case was heard by Special Trial Judge Randolph F. Caldwell, Jr. His report was filed on January 30, 1978, and no exceptions thereto have been filed by the parties. The Court agrees with and adopts with minor modifications the report of the special trial judge as set forth below. OPINION OF THE SPECIAL TRIAL JUDGE CALDWELL, Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax for fraud under section 6653(b) of the Internal Revenue Code of 1954, 1/ for years and in amounts as follows: YearDeficiencyAdditions to Tax1963$ 7,489.84$ 3,744.92196433,182.6116,591.301965189,152.2594,576.121966466,348.51233,174.25*387 By order of this Court dated February 9, 1977, and served on petitioners on February 12, 1977, this case was calendared for trial on May 31, 1977 at Dallas, Texas, the place of trial requested by petitioners. Thereafter, on April 8, 1977, respondent filed a motion under Rule 91(f) of the Court's Rules of Practice and Procedure, 2/ for an order to show cause why the facts and evidence in respondent's proposed Stipulation of Facts and First Supplemental Stipulation of Facts attached to said motion should not be accepted as established for the purposes of this case. 3 Ten days later, on April 18, 1977, the Court granted respondent's motion and entered an order directing petitioners to file responses in compliance with Rule 91(f) and to show cause on May 18, 1977, why the facts and evidence recited in respondent's proposed stipulations of facts should not be accepted as established for the purposes of this case. *388 This case was called from the calendar for the Motions Session of this Court at Washington on May 18, 1977, for hearing on the April 18 order to show cause. There was no appearance by or on behalf of petitioners, nor had they filed any response. In those circumstances the Court thereupon on the same day entered an order wherein the Order to Show Cause was made absolute and the facts recited in respondent's proposed stipulations of facts, together with the evidence identified in and attached to such stipulations, were deemed established for the purposes of this case. That order was served upon petitioners on May 23, 1977. After the Court had indicated at the hearing on May 18 that it would make the order to show cause absolute, respondent filed a motion for summary judgment under Rule 121, which was served upon petitioners on May 23, 1977, together with an order calendaring the motion for summary judgment for hearing at Dallas on May 31, 1977, the place and date where the case was calendared for trial. Subsequently, on May 31, 1977, the case was called at Dallas for trial and for hearing on the motion for summary judgment. Respondent appeared by his counsel. There was no*389 appearance by or on behalf of petitioners.Respondent that day filed a brief in support of his motion for summary judgment. Petitioners were served with a copy of respondent's brief and were given until August 1, 1977, to file a brief in response to that of respondent; and respondent was given until August 31, 1977, to file a brief in reply to petitioners' brief. Such briefs were thereafter timely filed. With such information in mind, the petitioner apparently *the issues presented for decision are: (1) Whether there are deficiencies in petitioners' Federal income tax for the years and in the amounts as determined by the respondent. (2) Whether any part of any underpayment of tax for any of the years in controversy was "due to fraud" within the meaning of section 6653(b), so as to render petitioner John Adam Dante (formerly John Dale McDonald) liable for the additions to tax determined under that section. Respondent has conceded that petitioner Martha N. Dante (formerly Martha N. McDonald) is not liable for any additions to tax. (3) Whether the assessment of any deficiencies and of additions to tax for which petitioners may be found liable for the years in controversy, *390 is barred by the statute of limitations prescribed in section 6501(a). FINDINGS OF FACT 4/ Petitioners are husband and wife. During the taxable years 1963 through 1966, petitioners were known as John D. McDonald and Martha N. McDonald. On December 12, 1967, John Dale McDonald changed his name to John Adam Dante in the Juvenile Court of Dallas County, Texas. The legal residence of petitioners on December 7, 1972, the date of the filing of their petition herein was in West Vancouver, British Columbia, Canada. They filed a timely joint return for each of the years in controversy, those for the years 1963 through 1965 with the District Director at Dallas and that for the year 1966 with Southwest Service Center in Austin, Texas. Respondent mailed the statutory notice of deficiency on July 18, 1972. The husband petitioner will hereinafter be referred to as "petitioner"; the wife petitioner*391 will be referred to as "Mrs. McDonald." During the taxable years involved, petitioner manufactured and sold machines known as exercise machines. He manufactured and sold such exercise machines through sole proprietorships which he owned and operated. Those proprietorships were known variously as "Bioelectronics, Inc.", "National Electronics", and "Figure Magic". Petitioner's principal place of business was located in Dallas, Texas, throughout the years 1963 through 1966. Petitioner sold exercise machines in at least the following number of units for the years indicated: YearsUnits196366819641,76619659,001196612,296In addition to the sale of individual exercise machines, petitioner also sold parts and optional equipment for exercise machines during each of the foregoing years. The exercise machines were sold by petitioner in both the wholesale and retail markets. During the years involved, petitioner also rented exercise machines. On or about August 1, 1966, International Contrex Corp. ("Contrex") was incorporated under the laws of Texas. Petitioner assisted in the formation of that corporation. Petitioner's brother, E.L. McDonald, *392 became the president of the corporation. It filed its first income tax return (Form 1120) for the taxable period ended August 1, 1967. The income and expenses of said corporation are not directly involved in this case. The corporation paid McDonald consulting fees in 1967 which are not directly involved in this case. On or about August 1, 1966, petitioner ceased manufacturing exercise machines as a sole proprietor, and on or about the same date Contrex began manufacturing the machines and purchasing the attache cases in which they were sold. During 1964, petitioner received gross receipts from the sale and rental of exercise machines and other income from specific sources at least to the extent shown below: Checks SourceCashDepositedTotalDavid Lee Causey$45,956.25$13,866.75$59,823.00Beneficial Fiance Co.7,678.527,678.52Dorothy Chenoweth821.39821.39Bertha Hartman5,170.005,170.00Merall Products2,659.552,659.55Lorraine Taylor200.00200.00Blake Ward10,889.5010,889.50Other Deposits (notidentified above)23,027.3823,027.38Total gross receiptnot less than$46,777.64$63,491.70 *$110,269.34*393 During 1965, petitioner received gross receipts from the sale and rental of exercise machines and other income from specific sources at least to the extent shown below: Checks SourceCashDepositedTotalDavid Lee Causey$238,950.83$119,987.17$358,938.00Beneficial Finance Co.345.0558,089.1058,434.15Dorothy Chenoweth8,269.858,269.85Gran Dor Corp.16.0016.00G.R. Jackson3,899.004,011.007,910.00John Reynolds745.00745.00Other Deposits (notidentified above)14,901.5314,901.53Total gross receiptnot less than$251,464.73$197,749.80 *$449,214.53During 1966, petitioner received gross receipts from the sale and rental of exercise machines and other income from specific sources at least to the extent shown below: Checks SourceCashDepositedTotalDavid Lee Causeyand/or IsotronCorporation$381,810.94$352,901.06$734,712.00Gary Causey80.0080.00John Capuano721.50721.50Floyd Coker1,350.001,350.00Charles Cranford4,060.004,060.00Ed Floyd3,342.003,342.00Valderia Gooch1,487.201,487.20Gran Dor Corp.2,241.902,241.90Troy Griffin105.00105.00Zell Gusseck214.00214.00Isotron of Texas22.0022.00G.R. Jackson4,070.0021,289.0025,359.00F.T. Johnson14.0014.00Elmer Kooi8.508.50S.A. Magness170.00170.00Wendell Maxwell5.505.50Sam McCallum1,009.00$1,009.00Edmund Gasser Page164.00164.00John Reynolds190.00190.00Gilbert Smith682.00682.00Charles Snow286.40286.40John W. Thomas279.00279.00Blake Ward575.00575.00Betty Wood817.00817.00Other deposits (notidentified above)27,019.0027,019.00Coca Cola, Dr. Pepper183.22183.22Total gross receipts$385,880.94$419,216.28 *$805,097.22not less than*394 This figure does not include currency Petitioner maintained bank accounts during the years here involved, as follows: Period Name of AccountBankCovereda. Bioelectronics SciencePreston State Bank3/11/63 - 9/23/63Div., Physical Fitnessb. Figurecare SystemFlorida National Bank1/1/63 - 6/30/63c. Bioelectronics, Inc.Preston State Bank7/1/63 - 9/8/64d. Bioelectronics, Inc.Casa Linda Nat'l. Bank8/23/63 - 4/30//64e. MedtronicsPreston State Bank5/11/64 - 7/30/64f. Figurelite (FigureMagic)Hillcrest State Bank7/20/64 - 3/31/65g. Figure MagicPreston State Bank3/8/65 - 11/26/65h. National ElectronicsHillcrest State Bank10/28/65 - 1/10/67i. D.M. CompanyNorth Park Nat'l Bank8/1/66 - 1/30/67A summary of the deposits to the above-listed bank accounts for each of the years 1963 through 1966 is as follows: Total Bank Deposits Bank Account1963196419651966Bioelectronics$ 12,980.25Science Div.Physical FitnessFoundation, PrestonState BankFigurecare System7,253.76Florida Nat'l. BankBioelectronics, Inc.2,904.09$18,596.91Preston State BankBioelectronics, Inc.10,646.443,333.43Casa Linda NationalMedtronics2,009.00Preston State BankFigurelite (Figure43,676.83$31,833.48Magic), HillcrestState BankFigure Magic210,392.23Preston State BankNational Electronics164,097.48$409,623.93Hillcrest State BankD.M. Company, North43,470.00Park National BankTotal Deposits$ 33,784.54$ 67,616.17$406,323.19$453,093.93Less: Bank transfersCharge backs(redeposits)(6,957.50)(195.47)(20,000.00)(10,000.00)Other non-incomeitems(46,718.69)(15.00)Net Deposits$26,827.04$ 67,420.70$339,604.50$443,078.93*395 Included in the above total bank deposits are currency deposits for the years involved, as follows: Currency Deposits Bank Account1963196419651966Bioelectronics$4,750.00Science Div.Physical FitnessFoundation, PrestonState BankFigurecare System5,600.00Florida Nat'l. BankMedtronics$ 9.00Preston State BankFigurelite (Figure1,020.00$22,177.00Magic), HillcrestState BankFigure Magic98,952.00Preston State BankNational Electronics18,000.00$22,000.00Hillcrest State BankTotal CurrencyDeposits$10,350.00$1,029.00$139,129.00$22,000.00Petitioner dealt extensively in cash in his business operations and for personal expenditures during the years involved. On December 20, 1963, Basil Georges sold a 1963 Cadillac, Model 6267 convertible, to petitioner, d/b/a/ National Electronics, for $5,000 which he paid for in currency of $100 bills. Petitioners purchased furniture, carpets, and accessories from Anderson Furniture Studio during the years here involved. Petitioners paid cash for these items, as follows: DateAmount 4-15-64$ 455.94 7-7-65171.12 8-10-65319.62 9-29-6557.00 11-5-65394.6011-15-651,457.82 1-5-672,712.54 3-16-673,814.73 Total$9,383.37*396 Also, on September 26, 1966, petitioner paid Anderson Furniture Studio for purchases of furniture with a cashier's check in the amount of $5,800. That sum was obtained from the proceeds of a check from Edward D. Olson. The $5,800 received from Mr. Olson was not deposited in any bank account of petitioner. On the dates shown below, petitioner purchased stereos and television sets from Duke Doyle, Inc., and paid cash therefor, as follows: DateAmount11-15-65$ 546.2012-16-65566.101-26-66672.203-3-66575.794-23-66432.3810-29-66877.20Total$3,669.87On February 13, 1964, petitioner purchased property at 700 Laguna, Richardson, Texas, in the name of Mamie E. Butler for $28,700, with a cash down payment of $2,000. The balance of $921.21, as shown on the purchaser's statement was paid by $800 cash from petitioner and a check for $121.21 written by petitioner on the bank account of Bioelectronics, Inc. On April 3, 1964, and on April 30, 1964, petitioner paid in currency $100 and $592.80, respectively, to Henry Feldhaus for carpet and installation of same in his residence. On February 22, 1965, and April 28, 1965, petitioner, d/b/a*397 Figure Magic, made cash purchases of furniture from Freed Furniture Co. in the amounts of $841.50 and $318.24, respectively. Petitioner purchased furniture and accessories from Howard Goldman Interiors for cash, as follows: DateAmounts4-8-65$100.004-8-6591.233-24-65100.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.848-7-65568.926-5-65171.88Total$1,074.87On April 14, 1965, petitioner purchased rugs, pads, and installation services from Weston's Carpets at a total cost of $1,450.44. He paid $1,260.44 in currency on or about June 16, 1965, and $190 in currency on July 7, 1965. During October 1965, petitioner purchased a metal boat house and a 1961 model "Century" boat from Wilmoth Goff for $3,400 cash. On November 23, 1965, petitioner purchased from Philip A. Dill, Inc., a Sportcraft "Safari" boat for $2,860.14 cash and a trade-in of the "Century" boat mentioned in the prepreceding paragraph. On December 24, 1965, petitioner purchased a rosewood chair and ottoman for $606.90 cash from Contemporary House Furnishings, Inc. Petitioner purchased other furniture from the same source for cash in the following amounts: DateAmount2-24-66$ 491.742-24-66627.303-22-66467.16Total$1,586.20*398 On January 31, 1966, Petitioner purchased property at 11308 Flamingo, Dallas, Texas, for which he paid $10,792.75 cash. On February 16, 1966, petitioner purchased appliances for cash in the amount of $1,189.32 from J.G. Boyd's, Good Housekeeping Shops, Inc. On November 22, 1966, petitioner purchased a 1967 Lincoln from Eagle Lincoln Mercury, Inc., and paid the balance due after credit for trade-in, of $3,175 in currency. During the year 1966, petitioner paid $2,000 cash to Marvin Cape for construction work performed on petitioner's residence on Dilbeck, Street, Dallas, Texas, and $800 cash for work done on a business facility in Snyder Plaza in Dallas. During the first six months of 1967, petitioner expended more than $50,000 in currency when his total income reported on his 1967 return was $15,800 from consulting fees. On April 13, 1967, he purchased in the name of his brother, health equipment from Paramount Health Equipment Corporation for cash in the amount of $13,000. Also during the year 1967, petitioner paid $39,500 cash to Mr. Cape for construction work performed by Mr. Cape to remodel two buildings on Sherry Lane in Dallas. Petitioner also paid $983.81 to Mr. *399 Cape in 1967 for work done on petitioner's Dilbeck Street residence. On July 13, 1967 (prior to changing his name by court order), petitioner applied for a social security number under the name of John Adam Dante, and in the application he gave false information as to the year of his birth, the place of his birth, and the names of his parents. Also, in that application petitioner falsely indicated that he had never before applied for or had a social security account number. Petitioner dealt extensively in currency in 1963, 1964, 1965, and 1966. He told an associate in 1965 and in 1966 that money which he did not report did not go into a bank account. During 1965, in petitioner's operation of his retail outlets for exercise machines, he pocketed currency received as sales proceeds which was not deposited. Petitioner told an associate that he was not going to report the pocketed currency as income for income tax purposes. During 1965, when petitioner's sales personnel received a check from a customer for an exercise machine, petitioner instructed the sales person to have the check made payable to himself, cash it at a bank, and then bring the cash proceeds to petitioner. *400 Petitioner would thereupon pay the sales person a commission and pocket some of the currency. Petitioner told an associate that he (petitioner) was not going to record the sales proceeds which he pocketed and did not deposit. On an occasion in 1965 or 1966, petitioner told an associate while, he (petitioner) was talking to a customer that if he gave the customer a receipt for amounts that the customer paid him, then there would be a record that he had received the money.Petitioner told the associate at the time that this was a situation which he wanted to avoid for tax reasons. Petitioner told two associates that they should never give receipts for cash purchases unless they intended to make book entries.Petitioner told those associates that if a person had currency that he did not want the Internal Revenue Service to know about, the currency should not be deposited in a bank account and that no trace should be left as to where the currency might have been spent. Petitioner advised those associates not to open charge accounts because charge accounts provide a record of expenditures. Petitioner used virtually no invoices, and refused to give some dealers invoices. Petitioner*401 told a dealer on several occasions that he did not want any invoices in his records. Petitioner and Mrs. McDonald had a locked money box in their home. Petitioner told a dealer that he wanted to control the production of exercise machines so that no one could tell how many were manufactured, and that he preferred to deal in currency. On April 8, 1971, a Federal grand jury returned a threecount indictment in the United States District Court for the Northern District of Texas against petitioner, charging him with subscribing false income tax returns for the calendar years 1964, 1965, and 1966, in violation of Title 26, United States Code, section 7206(1). In a motion filed May 11, 1972, for issuance of a bench warrant, it was stated that: In chambers earlier this date Robert E. Davis, Attorney of Record for the defendant, advised the Court and the United States Attorney that last night he received a telephone call from the defendant who stated that he had left Dallas, Texas; that he was in British Columbia, Canada, in the vicinity of Vancouver; that he did not intend to return to Dallas for his trial set for next Monday, May 15, 1972, and that he had*402 been advised that he could not be extradited from Canada for the offenses alleged in the indictment. An order was issued requiring the appearance of the defendant in the criminal case. An order dated May 11, 1972, was issued for a bench warrant for the arrest of the defendant. An outstanding and unexecuted bench warrant was issued in the criminal tax case. An outstanding and unexecuted warrant was also issued requiring petitioner to answer an indictment charging him with failure to appear, in violation of Title 18, United States Code, section 3150. Petitioner is a fugitive from justice. An information was filed on August 30, 1972, by Royal Candaian Mounted Police Sergeant Bruce Barbour in the Province of British Columbia, City of Vancouver, charging petitioner with eight counts of false statements in connection with his application for admission to Canda. He was tried and found guilty on six counts of the information on July 31, 1973. On October 10, 1973, petitioner was sentenced to six months in jail, and a $500 fine was also imposed. Petitioner posted bond and appealed the conviction. On July 19, 1974, after a trial denovo, petitioner was*403 found guilty on five counts of the information; and the conviction and sentence were affirmed. Petitioner appealed the latter conviction to the Supreme Court of British Columbia unsuccessfully; and on March 31, 1976, he began serving his sentence. In a civil proceeding separate from the information, Canadian immigration authorities, after a special inquiry held in Vancouver in September 1973, ordered November 17, 1972, that Dante be deported to the United States. Dante appealed and the Immigrations Appeal Board overturned the deportation order. Petitioner is still seeking lawful admission to Canada. In 1966, the United States filed a complaint for injunction, Civil Action Number 1676, in the United States Court for the Northern District of Texas, Dallas Division, for alleged violations of the Federal Food, Drug, and Cosmetics Act (Title 21, United States Code, section 331 (a) and (k)). On September 6, 1966, petitioner and the other defendants entered a consent decree of permanent injunction in that civil action. Petitioner sold exercise machines at a wholesale price of not less than $69 per machine in 1963, 1964, and 1965, and at a wholesale price*404 of not less than $89 in 1966. Based upon such wholesale prices, and without taking into consideration the income from petitioner's retail and rental business, petitioner failed to report gross receipts of income from selling manufactured exercise machines in the years here involved, as follows: 1963196419651966Total grossreceipts$46,092.00$139,242.00$607,269.00$1,094,344.00Reported grossreceipts26,212.9078,840.00343,204.50464,494.93Unreported grossreceipts$19,879.10$60,402.00$264,064.50$629,849.07OPINION Rule 121 (Summary Judgment) provides in part in paragraph (b) thereof as follows: A decision shall * * * be rendered if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. * * * Respondent's motion for summary judgment is supported by the facts and evidence contained in the Stipulation of Facts and the First Supplemental Stipulation of Facts, which have been deemed established for the purposes of this*405 case in the proceedings under and pursuant to Rule 91(f). Petitioners made no response whatsoever when these stipulations were served upon them together with the order of this Court directing them to make such responses, nor did they appear, either in person or by counsel, at the hearing on May 18, 1977, to show any cause why those facts and that evidence should not be deemed established for the purposes of this case. Nor did they appear, either in person or by counsel, when the case was called for trial and for hearing on the motion for summary judgment at Dallas on May 31. We have in these circumstances accorded no weight to the unsworn attacks on some of the established facts and evidence by petitioner in the sketchy brief which he filed on June 29. We proceed to a consideration of the three issues presented for decision. 1. The deficiencies. - The burden of proof is upon the petitioners to establish that the deficiencies determined by respondent against them for the years 1963 through 1966 are erroneous. Rule 142(a). They have presented not a shred of evidence to establish error in the respondent's determinations. Moreover the facts and evidence which have been deemed*406 established show substantial omissions of taxable income in each of the years. We accordingly find and hold that petitioners are liable for the determined deficiencies set out above. 2. The addition to tax for fraud. - The respondent has the burden of proving fraud by clear and convincing evidence. Gilday v. Commissioner,62 T.C. 260, 262 (1974); Miller v. Commissioner,51 T.C. 915, 918 (1969). Most often, the respondent seeks to meet his burden at a trial where the facts are established by testimony of witnesses and the introduction of documentary evidence. However, in a number of cases, the facts necessary to carry such burden have been established through the pleadings of the parties, motions filed, and orders entered with respect thereto. Facts and evidence deemed established under Rule 91(f)--as has been done in this case -- have been held to present clear and convincing evidence of fraud. Costello v. Commissioner,T.C. Memo 1976-399 (1976); Strachan v. Commissioner,48 T.C. 335 (1967). See also Gilday v. Commissioner,supra; and Morris v. Commissioner,30 T.C. 928 (1958),*407 where the facts pleaded in respondent's answers were deemed admitted in proceedings under Rule 37(c) and its predecessor, Rule 18(c), and where such admitted facts were held to establish fraud by clear and convincing evidence. We must now determine whether the facts and evidence deemed established in this case are sufficient to justify the Court in finding that respondent has carried his burden of proof.In our judgment, on this factual matter, they are sufficient. First of all, this case reveals a pattern of consistent and substantial understatements of taxable income. There are wide discrepancies between the correct taxable income and that reported in the return for each of the taxable years involved, as is shown by the following tabulation: CorrectReported YearTaxable IncomeTaxable IncomeUnderstatement1963$25,348.29($ 148.48)$25,496.77196476,273.11($ 467.24)76,740.351965315,423.6113,457.14301,966.471966730,346.1448,403.44681,942.70 Those outsized understatements, extending in an increasing pattern over a four-year period, can hardly be considered mere omissions, Kalil v. Commissioner,271 F.2d 550 (5th Cir. 1959);*408 Anderson v. Commissioner,250 F.2d 242 (5th Cir. 1957), cert. denied 356 U.S. 950 (1958).Consistent and substantial understatements are highly persuasive evidence of fraud. Adler v. Commissioner,422 F.2d 63, 66 (6th Cir., 1970); Vise v. Commissioner,31 T.C. 220, 226-227 (1958), affd. 278 F.2d 642 (6th Cir. 1960); Kurnick v. Commissioner,232 F.2d 678, 681 (6th Cir. 1956); and Rogers v. Commissioner,111 F.2d 987 (6th Cir. 1940). In Rogers the Court stated in part, at p.989: Fraud cannot be lightly inferred, but must be established by clear and convincing proof. * * * It is conceivable that taxpayers may make minor errors in their tax returns, or, owing to different or contradictory theories of tax computation, calculate returns which differ greatly in result from the Commissioner's assessments. Here petitioners do not have that excuse.Discrepancies of 100% and more between the real net income and the reported income for three successive years strongly evidence an intent to defraud the Government. The Board did not err in deciding that 50% penalties should be assessed. *409 The record also establishes that petitioner dealt extensively in currency throughout the taxable years involved, and that this practice on his part was motivated by a desire to evade his tax liabilities. Such a course of conduct has been held to support a finding of fraud. Spies v. United States,317 U.S. 492 (1943); United States v. Schipani,293 F. Supp. 156, 161 (E.D.N.Y. 1968), affd. 414 F.2d 1262 (2d Cir. 1969); Bowlin v. Commissioner,31 T.C. 188, 203 (1958), affd. per curiam 273 F.2d 610 (6th Cir. 1960). In at least two instances, petitioner purchased property in the names of others. Such conduct is another evidence of fraud. Spies v. United States,supra;United States v. Schipani,supra;United States v. Peterson,338 F.2d 595, 597 (7th Cir. 1964), cert. denied 380 U.S. 911 (1965); Furnish v. Commissioner,262 F.2d 727, 729 (9th Cir. 1958); Chinn v. United States,228 F.2d 151 (4th Cir. 1955). Petitioner is also a fugitive from justice. Just prior to the date set for his trial on the*410 indictment obtained against him charging violations of section 7206(1), he fled to Canada from the United States to avoid standing trial, and he has remained a fugitive in Canada since that time.His flight in those circumstances is strong evidence of a fraudulent intent during the taxable years here involved. Moreover, petitioner failed to produce any books and records to respondent for his examination, and as consequence respondent's agents were compelled to determine petitioner's correct taxable income from third-party sources. We have not seen whatever records petitioner did keep for his manufacturing and selling operations; but, based on statements attributed to petitioner by his business associates and others with whom he dealt, we are satisfied that they were inadequate or misleading, calculatedly so, and with an intent to avoid his tax liabilities. Inadequate or misleading books and records have long been considered a badge of fraud. Spies v. United States,supra;Bryan v. Commissioner,209 F.2d 822, 827 (5th Cir., 1954); Romer v. Commissioner,28 T.C. 1228 (1957). In his brief, petitioner urges that decision in*411 the present case be deferred until after his criminal trial is concluded. Considering petitioner's fugitive status, we have no way of knowing when, if ever, he will return to the United States to stand trial. It has been almost six years since he fled to avoid prosecution, and, so far as the record shows, he has given no indication of coming out of his Canadian sanctuary. Being firmly convinced that the deficiencies and the consequent underpayment of tax were due to fraud with intent to evade tax on the part of petitioner, we sustain respondent's determination of the additions to tax under section 6653(b) against petitioner. 3. The statute of limitations. - In accordance with the holding under the second issue, we find and hold that the return for each of the taxable years involved was false or fraudulent. Accordingly, respondent's notice of deficiency covering each of those years was timely under the provisions of section 6501(c)(1). Moreover, as to the year 1966, while there can be no serious question as to petitioner's fraud, respondent has established that petitioner omitted from his gross income for that year an amount in excess of 25 per cent of the gross income*412 stated on the return for that year. Accordingly, respondent's notice of deficiency, having been issued within six years of the filing of the 1966 return, was timely under section 6501(e). Respondent's concession that Mrs. McDonald is not liable for the additions to tax under section 6653(b) for any of the taxable years involved does not affect the deficiencies determined against her. The pleadings raise no issue as to the applicability of section 6013(e) (innocent spouse provisions), and there is no evidence in any event that she should not be liable for the deficiencies.Respondent's proof of fraud on the part of her husband prevents the running of the statute of limitations so that Mrs. McDonald remains liable for the deficiencies. See S. Report No. 91-1537, 91st Cong., 2d Sess., 1971-1 C.B. 606, 608; Stone v. Commissioner,56 T.C. 213, 228 (1971); and Hicks Co. v. Commissioner,56 T.C. 982, 1030 (1971). On the record made in this case, there is no genuine issue as to any material fact, and we are satisfied that respondent is entitled to prevail as a matter of law on all the issues presented. Accordingly, respondent's motion for*413 summary judgment will be granted. An appropriate order and decision will be entered. Footnotes1. /↩ All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.2. All references to rules are to this Court's Rules of Practice and Procedure, effective January 1, 1974, unless otherwise stated. ↩3. The two stipulation documents contain 182 paragraphs in 132 pages, and there are 3,774 exhibits identified in and made a part of the stipulation documents.↩4. /↩ The facts here found are based upon the facts and evidence contained in respondent's proposed Stipulation of Facts and First Supplemental Stipulation of Facts, which have been deemed established for the purposes of this case, by virtue of the order entered on May 18, 1977.*. This figure does not include currency deposits.↩*. This figure does not include currency deposits.↩*. deposits.↩