WILLIE MACK, JR. AND JEAN A. MACK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mack v. Commissioner
Docket No. 15356-84
United States Tax Court
T.C. Memo 1989-490; 1989 Tax Ct. Memo LEXIS 493; 58 T.C.M. (CCH) 89; T.C.M. (RIA) 89490; September 7, 1989
Jack V. Place, for the petitioners. Stephen M. Friedberg, for the respondent. HAMBLEN
MEMORANDUM FINDINGS *495 OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654
1979
$ 15,649.87
$  7,824.94
1980 [2] 44,243.14
22,121.57
$ 2,821.83
Certain concessions having been made, [3] the issues remaining for our decision are 1) whether petitioners are entitled to deductions under section 162 or section 165 for cash confiscated by law enforcement authorities; 2) whether the seized cash should be treated as cost of goods sold; 3) whether petitioner Willie Mack, Jr. ("Mack") incurred a net operating loss in tax year 1980; 4) whether petitioners are liable for self-employment taxes determined by respondent under section 1401; 5) whether any part of the underpayment for each of the years at issue was due to fraud under section 6653(b); and *496 6) whether Mack underpaid estimated tax under section 6654 for taxable year 1980. FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. At the time of the filing of the petition in this case, petitioners lived in Roanoke, Virginia. Petitioners filed a joint income tax return for 1979. Neither petitioner filed an individual income tax return for 1980. In 1969, Mack declared bankruptcy. For the years 1972, 1973, and 1974, petitioners failed to file Federal income tax returns. For the years 1975, 1976, 1977, and 1978, Mack filed Federal income tax returns showing adjusted gross income of $ 15,562, $ 1,761, $ 12,872, and $ 12,869, respectively. During the period 1972 through 1978, petitioners spent $ 63,938 in cash for the purchase and capital improvements of realty. In 1978, Mack bought a 1977 Cadillac. In 1979, petitioners purchased $ 32,200 in depreciable assets for cash. During the years here in issue and in prior years, Mack engaged in illegal gambling and in selling marijuana. Mack did not keep financial records of *497 these activities. On the Federal income tax returns which they filed, petitioners failed to report income from Mack's marijuana sales. Petitioners also failed to report income from Mack's gambling activities until Mack was audited in 1970. Petitioners reported gambling profits on returns that they filed after the audit. The gambling income figures which petitioners reported were mere guesses not supported by complete and adequate books or accounts. In March, 1980, Roanoke City Police confiscated $ 14,000 cash from petitioners' residence in a raid prompted by Mack's gambling operations. Mack was convicted on his guilty plea of conducting an illegal gambling operation. In August, 1980, Drug Enforcement Administration (DEA) agents confiscated $ 100,000 cash from Mack at the Miami International Airport. Mack intended to purchase marijuana with the cash. He was convicted on his guilty plea of conspiracy to possess with intent to distribute marijuana. OPINION Respondent reconstructed petitioners' 1979 income and Mack's 1980 income by means of the excess of cash expenditures over cash receipts method of proof. Respondent issued to petitioners jointly a deficiency notice relating *498 to the 1979 tax year and to Mack solely a deficiency notice relating to the 1980 tax year. At trial in this Court, petitioners conceded the correctness of respondent's determinations of gross income for taxable years 1979 and 1980. Petitioners assert, however, that two deductions relating to cash confiscations by law enforcement authorities completely offset Mack's 1980 income. Petitioners argue that the cash confiscations constitute section 162 business expenses or section 165 business losses, since they are directly attributable to the conduct of Mack's illegal businesses. Petitioners also argue, on brief, that confiscated cash should be treated as cost of goods sold. Petitioners argue that the two deductions create a net operating loss for tax year 1980 which should be carried back to offset a portion of petitioners' 1979 income. Finally, petitioners contest respondent's determinations as to self-employment taxes and additions to tax. The first issue for our consideration is whether petitioners are entitled to deductions under section 162 or section 165 for cash confiscated from Mack. On two occasions in 1980, law enforcement authorities arrested Mack and confiscated from *499 him cash which he held with respect to illegal activities. The issue is now well settled that deductions for these cash confiscations, if allowed at all, would be as loss deductions under section 165 rather than as ordinary and necessary business expenses under section 162. See Fuller v. Commissioner, 213 F.2d 102 (10th Cir. 1954), affg. 20 T.C. 308 (1953) (liquor seized by authorities in a dry state presumed to be a loss item); Holt v. Commissioner, 69 T.C. 75 (1977), affd. per curiam 611 F.2d 1160 (5th Cir. 1980) (confiscation and forfeiture of assets used in drug trafficking held to be in the nature of losses rather than expenses); Richey v. Commissioner, 33 T.C. 272 (1959) (theft of $ 15,000 cash in scheme to counterfeit treated as a loss item). [4]
As the confiscated cash amounts would be deductible from gross income, if at all, only as section 165 losses, *500 we must decide whether Mack is entitled to deductions for these losses in tax year 1980. Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." In the case of an individual, the deduction is limited to losses incurred in the taxpayer's trade or business or in any transaction entered into for profit and to certain casualty losses. Sec. 165(c). The facts disclose that Mack was operating a gambling enterprise and was selling marijuana in 1980. Thus, the deductions asserted by petitioner Mack fall conceptually within the ambit of section 165(a) and 165(c)(1). Nevertheless, these loss deductions must be disallowed for the reasons that follow. We have found that in August, 1980, DEA agents confiscated $ 100,000 cash from Mack at the Miami International Airport with which he intended to purchase marijuana. Courts have consistently held that a loss deduction will be denied where the deduction would frustrate a sharply defined national or state policy. Fuller v. Commissioner, supra; Holmes Enterprises, Inc. v. Commissioner, 69 T.C. 114 (1977); *501 Holt v. Commissioner, supra; Mazzei v. Commissioner, 61 T.C. 497 (1974); Richey v. Commissioner, supra.
There was in 1980 and is today a strong national policy against drug trafficking. The denial of loss deductions for property used in drug trafficking as a result of this national policy is firmly established. See Holmes Enterprises, Inc. v. Commissioner, supra, and Holt v. Commissioner, supra, where we stated: The primary purpose of * * * forfeitures is to cripple illegal drug trafficking and narcotics activities by depriving narcotics peddlers of the operating tools of their trade. * * * The forfeitures, confiscations, fines and imprisonment of [taxpayers] are all aimed at stopping illegal drug trafficking. * * * Clearly it would be contrary to public policy to allow a deduction for the loss. * * * [Holt v. Commissioner, 69 T.C. at 80.] Accordingly, we deny petitioners a loss deduction for the confiscated $ 100,000.[5]
*502 In March, 1980, Roanoke City Police confiscated $ 14,000 cash from Mack in a gambling raid. A sharply defined public policy against illegal gambling existed in the state of Virginia during 1980. The fact of this policy is evidenced by Mack's plight. Police arrested Mack and seized his property as a result of his gambling activities. Accordingly, a loss deduction for the seized $ 14,000 cash is denied. This Court refuses to mitigate the impact of Virginia's policy against illegal gambling. [6]
Petitioners cited two cases as authority for the deductibility of the seized cash amounts: Commissioner v. Tellier, 383 U.S. 687 (1966), and Holt v. Commissioner, supra. Petitioners' reliance on these cases is misplaced. In Tellier, the taxpayer sought a business expense deduction for legal expenses incurred in the unsuccessful defense of a criminal prosecution relating to his business. The Commissioner conceded that the expenses were "ordinary and necessary." The only question was whether *503 the allowance of a deduction would frustrate public policy. The Supreme Court allowed the deduction, reasoning as follows: No public policy is offended when a man faced with serious criminal charges employs a lawyer to help in his defense. * * * It is his constitutional right. * * * In an adversary system of criminal justice, it is a basic of our public policy that a defendant in a criminal case have counsel to represent him. [Commissioner v. Tellier, 383 U.S. at 694.] In the instant case, however, public policy is directly offended by Mack's actions. Mack had no right, constitutional or otherwise, to engage in illegal gambling or selling marijuana. He did so at his own risk, and the resulting losses should be borne solely by him. Otherwise, the government would be forced to underwrite a portion of the costs incurred by Mack in his illegal enterprises. Petitioners assert that cash is different from other confiscated items for deduction purposes and cite Holt v. Commissioner, supra, in support of this proposition. In Holt, respondent credited seized cash against the taxpayers' tax liability. See 21 U.S.C. sec. 881, *504 as amended by Pub. L. 95-633, section 301(a)(1), 92 Stat. 3777. The deductibility of seized cash, therefore, is not decided in Holt. We find this argument in favor of deductibility unpersuasive. The second issue for our consideration is whether the seized $ 100,000 cash constitutes a portion of Mack's cost of goods sold. Petitioners first raised this issue on brief. The rule that a party may not raise a new issue on brief is not absolute. Rather, it is founded upon the exercise of judicial discretion in deciding whether considerations of surprise and prejudice require that a party be protected from having to face a belated confrontation which precludes or limits that party's opportunity to present pertinent evidence. E.g., Graham v. Commissioner, 79 T.C. 415, 423-424 (1982). See also Seligman v. Commissioner, 84 T.C. 191, 197-199 (1985), affd. 796 F.2d 116 (5th Cir. 1986). We find that respondent is not unfairly surprised or prejudiced by the manner in which petitioners raised this issue. Even though petitioners did not raise *505 the cost of goods sold issue until they filed their brief, the parties' stipulation of facts was sufficient for us to make a determination on the cost of goods sold issue. Furthermore, in his reply brief, respondent did not object to the fact that this issue was first raised on brief. We, therefore, will consider the issue whether the seized $ 100,000 cash is a deduction in the nature of a portion of the cost of goods sold. Petitioners argue that the seized cash is deductible as a portion of the cost of goods sold since the cash was "earmarked for the purchase of the product (marijuana) which [Mack] intended to purchase and sell." Regardless of this assertion, no goods were purchased or sold. Therefore, the seized cash is not deductible from gross receipts in arriving at gross income as cost of goods sold. See Fuller v. Commissioner, 213 F.2d at 105; Holt v. Commissioner, 69 T.C. at 78; sec. 1.61-3(a), Income Tax Regs.
We considered petitioners' other arguments in favor of deductibility and find them unpersuasive. We find that both cash confiscations result in losses that are disallowed so as not to frustrate public *506 policy. Having disallowed the claimed deduction, we find that petitioners are liable for the deficiency determined by respondent for the 1979 tax year and that Mack is liable for the deficiency determined by respondent for the 1980 tax year. We need not address whether petitioners are entitled to a net operating loss carryback from 1980 to 1979 as Mack incurred no net income tax loss in 1980. The next issue for our consideration is whether petitioners are liable in tax year 1979 and Mack is liable in tax year 1980 for self-employment taxes determined by respondent. Section 1401 provides for a tax on the self-employment income of every individual. "Self-employment income" is defined generally as "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business, * * *." Secs. 1402(a); 1402(b). Petitioners bear the burden of proving that they are not liable for self-employment tax. Rule 142(a). Since petitioners offered no proof on this issue, respondent's *507 determination is presumed to be correct. Accordingly, we sustain respondent's determination as to the additional self-employment tax liability for each of the years at issue. We next consider whether the underpayments of income tax for the taxable years 1979 and 1980 are due to fraud. Respondent asserts that some portion of the underpayment for each of the years at issue was due to fraud under section 6653(b). Mack argues that he believed he incurred a tax loss for tax year 1980 as a result of the cash seizures. He claims that, consequently, he did not possess a fraudulent subjective intent to evade tax when he underpaid his 1980 income taxes. Section 6653(b)[7] provides an addition to tax of 50 percent of the amount of a tax deficiency if any part of the underpayment is due to fraud. To sustain a fraud determination under section 6653(b), respondent has the burden of proving by clear and convincing evidence (1) that there was an underpayment of tax, and (2) that some portion of the underpayment was due to fraud. Sec. 7454(a); Rule 142(b); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). *508 Respondent has clearly shown an underpayment as to petitioners' tax year 1979 and Mack's tax year 1980. Accordingly, the first element of fraud is established for both years. To establish the second element under section 6653(b), respondent must demonstrate by clear and convincing evidence that the taxpayer had a specific intent to evade a tax due and owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Stringer v. Commissioner, 84 T.C. 693, 713 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986). Fraud must never be presumed or decided on the basis of suspicion. *509 Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Thurston v. Commissioner, 28 T.C. 350, 355 (1957). Nonetheless, fraud need not be established by direct evidence, but may be established from all relevant facts and circumstances. Kotmair v. Commissioner, 86 T.C. 1253, 1260 (1986); Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). The record in this case is replete with facts which impel a finding of fraud. We first note that Mack had been audited prior to the years at issue. He knew from the prior audit that all sources of income must be reported for Federal income tax purposes, including illegal income. Accordingly, we find that Mack cannot hide behind the mask of an individual unfamiliar with tax laws and their ramifications. Cf. Halle v. Commissioner, 175 F.2d 500, 503 (2d Cir. 1949), affg. 7 T.C. 245 (1946). Although the mere omission *510 of reportable income is not of itself sufficient to warrant a finding of fraud, the Fifth Circuit stated in Kalil v. Commissioner, 271 F.2d 550, 551 (5th Cir. 1959), affg. a Memorandum Opinion of this Court, that "the repeated omission of reportable income is not a mere omission." (Emphasis in original.) In the instant case petitioners consistently and intentionally understated or failed to report income. Petitioners failed to report all income generated from marijuana sales in 1978 through the years in issue. Petitioners also failed to report gambling income until after Mack was audited in 1970. The gambling income petitioners reported was mere guesswork, since Mack maintained no books or records of his illegal activities. Noting the magnitude of the deficiency for which we have found petitioners liable, we find that these guesses as to income were far less than Mack's actual gambling income. "[R]epeated understatements in successive years when coupled with other circumstances showing an intent to conceal or misstate taxable income present a basis on which the *511 Tax Court may properly infer fraud." Anderson v. Commissioner, 250 F.2d 242, 250 (5th Cir. 1957), affg. on this issue a Memorandum Opinion of this Court; Kalil v. Commissioner, 271 F.2d at 551. Other circumstances showing an intent to conceal or misstate taxable income exist in this case. Petitioners established a pattern of failing to file their returns. Petitioners did not file returns in 1972, 1973, 1974 and 1980. Mack also maintained no personal books or records of his various illegal business activities, as above-mentioned. In addition, petitioners made large purchases that they could not afford on the income they reported. Petitioners expended $ 63,938 for the purchase and capital improvement of realty during the period 1972 through 1978. Petitioners purchased a Cadillac in 1978 and $ 32,200 in depreciable assets in 1979. These purchases could not have been made from the income reported on their tax returns. As above noted, petitioners did not file returns in 1972, 1973, and 1974. For the years 1975, 1976, 1977, and 1978, Mack filed Federal income tax returns showing adjusted gross income of $ 15,562, $ 1,761, $ 12,872, and $ 12,869, *512 respectively. It is doubtful that petitioners had savings from income reported on returns prior to the mentioned tax years since Mack filed for bankruptcy in 1969. Petitioners knew that they were not reporting the majority of the income they were earning. Mack stated at trial in this Court that he was not able to file his 1980 return since he was in jail during the filing period. Respondent confronted Mack at trial in this Court with the fact that Mack was released on bond at the time the 1980 tax return was due. Mack recanted his story that he was in jail at the time the return was due. We found Mack devious and his testimony incredible. Consequently, we are not impressed with Mack's testimony in this Court that he believed he incurred a tax loss and, thus, did not possess the fraudulent subjective intent to evade tax. In consideration of all of the facts above mentioned, we find that the second element under section 6653(b) is met for both tax years in issue. Some portion of petitioners' underpayments of tax in 1979 and 1980 was due to fraud. Under section 6653(b), Jean A. Mack is not liable for the addition to the 1979 income tax for fraud unless "some part of the underpayment *513 is due" to fraud on her part. In April, 1980, Jean A. Mack filed a joint tax return for 1979 with her husband Mack. This return failed to disclose income from the sale of marijuana and reported adjusted gross income of only $ 17,834. It is inconceivable that Jean A. Mack would be unaware of her husband's arrest for operating an illegal gambling establishment in March, 1980, his illegal dealings, and their large purchases, including the Cadillac. We are convinced that Jean A. Mack knew that the return was false when she signed it. As a result, part of the underpayment is due to fraud on the part of Jean A. Mack. We find that respondent has successfully carried his burden of proof by clear and convincing evidence. Consequently, we sustain the additions to tax determined against petitioners under section 6653(b). In conclusion, we consider respondent's determination of an addition to tax under section 6654 for the underpayment of estimated tax. In 1980, Mack did not make any estimated tax payments nor were amounts withheld from his income. We have found that a deficiency exists in petitioner's payment of his 1980 tax liability. Once a deficiency has been established, section *514 6654 is mandatory unless petitioner can bring himself within certain exceptions not here applicable. Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Accordingly, the addition to tax under section 6654(a) is sustained. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue and rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Tax year 1980 involves only petitioner Willie Mack, Jr.↩
3. Petitioners conceded the correctness of respondent's determination of gross income for taxable years 1979 and 1980.↩
4. See also Gambina v. Commissioner, 91 T.C. 826, 827 n.3 (1988); Gillan v. Commissioner, T.C. Memo. 1988-321↩.
5. Section 280E, enacted in 1982, codified the disallowance of deductions for any amounts paid or incurred in carrying on an illegal drug business. This section is applicable to amounts paid or incurred after September 3, 1982. We note that this section does not apply to the years in issue. Sec. 351(e), Pub. L. 97-248, 96 Stat. 640.↩
6. See Farris v. Commissioner, T.C. Memo. 1985-346, affd. without published opinion 823 F.2d 1552↩ (9th Cir. 1987).
7. Sec. 6653(b) provides, in pertinent part, as follows: (b) Fraud. --If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *↩