**Mrs. Annie Laurie REWIS, as Temporary Administratrix of the Estate of Joann Rewis, Deceased**

**and**

**Mrs. Annie Laurie Rewis and Joseph Sidney Rewis, individually, Plaintiffs-Appellants,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

**No. 28960.**

United States Court of Appeals, Fifth Circuit.

July 2, 1971.

Joseph B. Bergen, Robert Hitch, III, Savannah, Ga., for plaintiffs-appellants.

R. Jackson B. Smith, Jr., U. S. Atty., Savannah, Ga., Robert Young, Morton Hollander, Chief, Appellate Section, J. F. Bishop, Attys., U. S. Dept. of Justice, Washington, D. C., William D. Ruckelshaus, Asst. Atty. Gen., for defendant-appellee.

Before BROWN, Chief Judge, DYER and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

At 7:20 P.M. on the evening of September 5, 1963, little 15 months old Joann Rewis drew her last labored breath—the result of acute salicylate (aspirin) poisoning. This tragic story has been thrice told and little purpose would be served in reciting the facts of that fateful event. A concise statement of the pertinent facts, together with the history of two previous trials and one appeal, appear in this court's opinion in Rewis v. United States, 369 F.2d 595 (5th Cir. 1966), and the lower court's judgment from which the instant appeal is taken. Rewis v. United States, 304 F.Supp. 410 (S.D.Ga., 1969).

Pursuant to this court's remand in Rewis v. United States, 369 F.2d 595, the district court tried the case anew.

Under a stipulation of the parties, all testimony adduced at the first trial was considered by the court upon retrial, but with two exceptions. Dr. Andrew Ageloff, whose testimony was introduced in the first trial upon deposition, appeared and testified in person. More importantly, the erroneous factual assumptions posited in the Government's hypothetical question to Dr. Shepherd, the plaintiffs' expert medical witness, was expunged from the record and Dr. Shepherd rendered his opinion absent those assumptions.

Upon this evidentiary base, the court below, sitting without a jury, rendered its judgment in favor of the United States, finding that the attending Air Force Medical Officer, Dr. Robert H. Finley, did not fall below the required standards of medical care in his diagnosis and treatment of Joann Rewis.

■ Our review of the lower court's findings is, of course, governed by Fed. R.Civ.P. 52(a), and this court cannot set aside those findings unless they are clearly erroneous. A trial court's finding of fact is clearly erroneous if it is without substantial evidence to support it, or the district court misapprehended the effect of the evidence. Lentz v. Metropolitan Life Insurance Co., 428 F. 2d 36, 39 (5th Cir., 1970); Gibbs v. Tomlinson, 362 F.2d 394, 397 (5th Cir., 1966). Likewise, a finding of the district court is clearly erroneous "when although there is evidence to support it; the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). This court, having steeled itself to the task of reviewing all the evidence introduced in both trials which was considered by the lower court in reaching its determination, is left with the definite and firm conviction that a mistake indeed has been committed. We base our reversal not on a prior history of salicylate ingestion by the deceased child, for we agree with this court's prior observation and the district court's

finding, involving as it did a resolution of witness credibility, that no mention of prior aspirin ingestion was made to Dr. Finley upon his examination of the child on the evening of September 4, 1963. However, as the district court correctly recognized, the inquiry into the alleged negligence of Dr. Finley in his diagnosis and treatment of Joann Rewis does not end there. For assuming no prior history of aspirin ingestion, if the diagnosis and treatment by Dr. Finley did not comport with the then recognized standard of medical care required, there would be negligence and concomitantly, upon a finding of causation, liability. We note initially that the testimony of the plaintiffs' and defendant's expert medical witnesses was diametrically opposed on the question of Dr. Finley's adherence to the then recognized medical standard of care. Thus it was incumbent upon the trial court to resolve the conflicts in the testimony. While we do not question the trial court's crediting of Dr. Finley's testimony, we reject as clearly erroneous the trial court's discounting of Dr. Shepherd's testimony and medical opinion on the basis of a hypothetical history and the factual assumptions upon which his conclusions were based. The history given to each expert witness, plaintiffs' and defendant's alike, was hypothetical in nature but predicated upon proven evidentiary facts. Likewise, the factual assumptions serving as the basis for Dr. Shepherd's medical opinion and conclusion were undergirded by a sound evidentiary base. While it is a factor in our determination, we do not base our reversal on this erroneous rejection of expert testimony alone. The result we here reach is ordained by what we perceive to be more serious error.

The record plainly reveals that a critical and vital element in the opinions rendered by the defendant's expert witnesses was a prior family history of viral illness, particularly that of the mother of the deceased child. Yet the evidence clearly reflects that the clinical record narrative summary prepared and signed

by Dr. Ageloff was in error when it stated that "[a]t about 2100 hrs. on 4 Sep. 63, she (Joann Rewis) had been seen by the MOD (Dr. Finley) along with her mother and *several siblings. All of the patients were manifesting vomiting, diarrhea and mild pharyngitis. It was quite obvious that they were all suffering from the same viral illness* which is presently quite prevalent in our community." (Emphasis supplied) The record is devoid of any support for the above statement and, indeed, Dr. Ageloff conceded in his testimony that the above statement was the result of his being misinformed. Of more critical import, we think, is the prior history of the mother who was examined by Dr. Finley approximately two hours before the examination of the infant daughter. Dr. Finley's diagnosis and treatment of Joann Rewis was influenced to a significant extent by his examination of, and clinical findings on, the mother. Yet the symptoms manifested by each were markedly dissimilar. From the undisputed documentary evidence (health records), it is observed that the mother was running a fever of 102.8°, while the temperature of the daughter, taken rectally, was 99.2°—considered normal. The mother had no history of vomiting or diarrhea, while the daughter manifested severe symptoms of both. The mother exhibited a redness of the eardrums while the daughter's ears were noted as unremarkable. The health record of the mother suggests that a throat culture was ordered, while that of the daughter reflects no such entry. The daughter was noted to be hyperventilating, while no such symptom was observed in the mother. The only symptom found to be in common between mother and daughter was a red and inflamed throat, and it was upon these findings that Dr. Finley concluded that little Joann Rewis had the same viral infection as her mother.

As noted above, Dr. Finley entered on Joann Rewis' health record at the time of his examination that she was "hyperventilating". There was sharp disagreement among the expert witnesses as to the significance of this entry. Dr. Finley explained that this notation was common and signified nothing more than that the child was agitated, breathed rapidly and seemed frightened upon being examined by a physician at that hour. Dr. Ageloff, the principal expert medical witness for the Government, testified on redirect examination as follows:

"Q Doctor, is there any one single feature which is critically important in the diagnosis of aspirin poisoning?

A You mean one single feature?

THE COURT: Between what now? I didn't get the question.

MR. YOUNG: In the diagnosis of aspirin poisoning.

THE COURT: All right.

THE WITNESS: I assume you mean other than the blood aspirin level?

Q Right?

A Clinical finding. *I would say one single feature of greatest importance, if I had to pick one, would probably be deep rapid breathing.*" (Emphasis supplied)

Dorland's Illustrated Medical Dictionary, 24th Edition, defines hyperventilation as rapid and deep breathing. Expert witness testimony also reflected that "hyperventilation" implies depth. Considering all the testimony and the totality of the circumstances, we reject as clearly erroneous the trial court's conclusion that the degree of hyperventilation indicating salicylate poisoning was not present when Dr. Finley made the examination. Dr. Finley's explanation of the manifested "over-breathing" of Joann Rewis is entitled to little weight when juxtaposed with the uncontradicted documentary notation of "hyperventilating" —for as the Supreme Court noted in United States v. Gypsum Co., *supra,* at 396, 68 S.Ct. at 542:

"Where such testimony is in conflict with contemporaneous documents we

can give it little weight, particularly when the crucial issues involve mixed questions of law and fact."

In view of the above, we reverse the district court's holding that Dr. Finley was not negligent in examining Joann Rewis and that there was no malpractice involved in his examination, diagnosis or making of additional tests.

Because the district court found no negligence, there is absent any finding on the issue of causation and other relevant issues. The case is remanded to the court below for further findings upon all relevant issues raised by the pleadings and the evidence. Since the case was tried to the court without a jury, such findings may be made upon the record of evidence now before the court, or the district court in its discretion, may reopen the case for the development of further evidence.

Reversed and remanded.