Kenneth Poy LEE and Chow Joy Lee,
Plaintiffs-Appellees,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 72–1357
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 6, 1972.

See also, D.C., 323 F.Supp. 658.

* Rule 18, 5 Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, 5 Cir. 1970, 431 F.2d 409.

12

H. M. Ray, U. S. Atty., Oxford, Miss., Scott P. Crampton, Asst. Atty. Gen., Jack D. Warren, Meyer Rothwacks, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

James P. Knight, Jr., Jackson, Miss., for plaintiffs-appellees.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an appeal by the government from an adverse ruling on taxpayers' suit to harvest a refund of taxes paid under protest. Using "net worth statements" to demonstrate an unexplained flowering of taxpayers' wealth, the government sought to show that the luxuriating of financial seedlings into larger plants was attributable to the receipt of unreported monetary nutrients.[1] In order to avoid a statute of limitations barrier to tax liability, the government was required to prove fraud in the understatement of income. The trial judge was unpersuaded as to that threshold point and accordingly entered judgment for taxpayers. At the government's urging, however, we have unearthed indications that the trial judge misconceived some of the evidence and misapprehended its effect, and we therefore remand the case for reconsideration of the evidence.

Taxpayers, Kenneth Poy Lee and his wife, Chow Joy Lee, are American citizens of Chinese ancestry. During the taxable years in question, 1962 through 1964, they operated a grocery store that Mr. Lee owned, the Acme Food Mart in Greenwood, Mississippi. They conducted the business as a partnership, with Mr. Lee acting as business manager.

Mr. Lee personally maintained all business records, basically utilizing a cash receipts and disbursements method of accounting and reporting income. He recorded sales and expenses by a single-entry bookkeeping method. When customers made cash purchases, the total was computed on an adding machine and then punched into a cash register. Credit transactions were treated as cash sales at the time of collection. At the end of each day, the cash register total would be recorded in the taxpayers' books, typically without further verification. Annual inventories were made by estimating the amount of goods on hand after January 1 of each year.

Taxpayers were not familiar with the preparation of federal income tax returns although Mr. Lee regularly prepared state sales tax returns. Each year Mr. Lee took his records to a certified public accountant, who prepared his individual and partnership federal tax returns for him.

On January 1, 1966, William J. Sykes, an agent of the Internal Revenue Service, visited taxpayers in the hope of obtaining their consent to extending the three-year statute of limitations for taxable year 1962.[2] On that and several subsequent occasions, Sykes observed that some sales were not recorded on the cash register, which Mrs. Lee admits occasionally happened.[3]

On February 1, 1966, Sykes and Eugene Fortenberry, a special agent of the IRS, began an extensive examination of taxpayers' records and returns for the taxable years in issue. Fortenberry was later replaced by special agent Donald L. Mann, who completed the investigation of taxpayers' returns. In May, 1966 Mann prepared a "net worth statement" for the taxable years in issue and submitted it to taxpayers for their inspection. Taxpayers registered no objections to the net worth statement at that time, and on January 15, 1970, the District Director of the IRS assessed additional income taxes, penalties, and interest for the taxable years 1962, 1963, and

1. "Whatsoever a man soweth, that shall he also reap." *Galatians 6:7*.

2. 26 U.S.C.A. § 6501(a).

3. Mrs. Lee testified that when the store was crowded with customers waiting to be checked out, she would sometimes forget to enter the sale on the cash register. Additionally, there was testimony that taxpayers' minor children sometimes handled sales.

1964.[4] Taxpayers paid the additional assessments under protest and filed this suit for refund in the United States District Court for the Northern District of Mississippi.

Because the three-year statute of limitations had already run for each of the taxable years in question, the government's case depended upon proof by clear and convincing evidence that the returns were fraudulent with the intent to evade tax. *See* Jenkins v. United States, 5 Cir. 1963, 313 F.2d 624. Whenever such fraud is shown, there is no limitations period, *id*; 26 U.S.C.A. § 6501(c)(1), but the government's burden is heavy indeed.[5]

The proof of fraud offered in the instant case consisted of government computations revealing that the taxpayers' "net worth" during the three years in question increased by $71,637.45 while taxpayers only reported adjusted gross income for the same period approximately totalling $8,000. Based upon the evidence adduced at trial, the district judge made findings of fact that there were several inaccuracies in the government's computations. The following errors were thought to be particularly prejudi-

4.

| Year | Adjusted Gross Income Reported | Tax Paid on Income Reported | Adjusted Gross Income Alleged by IRS | Additional Tax Assessed | Penalties Assessed | Interest Assessed |
|---|---|---|---|---|---|---|
| 1962 | $2,767.67 | $ 93.43 | $30,616.49 | $7,506.29 | $3,753.15 | $3,075.83 |
| 1963 | (–477.48) | 0.00 | 20,213.44 | 4,142.43 | 2,071.22 | 1,444.12 |
| 1964 | 5,589.94 | 206.85 | 20,807.52 | 3,703.55 | 1,851.78 | 1,073.17 |

TOTAL ADDITIONAL ASSESSMENT: $28,621.54

———◆———

5. "Fraud

'The appellate court's role in reviewing cases of civil tax fraud entails unique, though not exclusive, dualistic frustrations. To affirm for the Commissioner, we must agree that he has proved fraud by 'clear and convincing evidence.' Moreover, what he has proved must be fraud, not mere negligence or even gross negligence. Judge Brown has analyzed the tests in Carter v. Campbell, 5 Cir. 1959, 264 F.2d 930, 935–936:

'There is first the matter of what is and what is not fraud. We have recently given our approval, Olinger v. Commissioner of Internal Revenue, 5 Cir. 1956, 234 F.2d 823, 824, to the strong language of Davis v. Commissioner of Internal Revenue, 10 Cir. 1950, 184 F.2d 86, 87, 22 A.L.R.2d 967. "Fraud implies bad faith, intentional wrongdoing and a sinister motive. It is never imputed or presumed and the court should not sustain findings of fraud upon circumstances which at most create only suspicion." Equally emphatic is that stated for us by Judge Sibley in Mitchell v. Commissioner, 5 Cir. 1941, 118 F.2d 308, 310. "Negligence, whether slight or great, is not equivalent to the fraud with intent to evade tax named in the statute. The fraud meant is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. Mere negligence does not establish either." These principles have been restated frequently and recently with no recession either from emphatic language or like application. Goldberg v. Commissioner of Internal Revenue, 5 Cir. 1956, 239 F.2d 316, 321; Fairchild v. United States, 5 Cir. 1957, 240 F.2d 944, 947; Eagle v. Commissioner of Internal Revenue, 5 Cir. 1957, 242 F.2d 635, 638; Jones v. Commissioner of Internal Revenue, 5 Cir. 1958, 259 F.2d 300. See also 10 Mertens, Federal Income Taxation § 55.10.

'Added to this is the burden placed upon the Commissioner. The Code places it expressly upon the Commissioner. 10 Mertens, Federal Income Taxation § 55.18. "The burden is upon the Commissioner to prove affirmatively by clear and convincing evidence actual and intentional wrongdoing on the part of the petitioner with a specific intent to evade the tax." Eagle v. Commissioner of Internal Revenue, 5 Cir. 1957, 242 F.2d 635, 637. 10 Mertens, supra, at § 55.16.' "

Webb v. Commissioner, 5 Cir. 1968, 394 F.2d 366, 377–378.

cial to taxpayers: (1) understating the amount of "cash on hand" at the beginning of taxable year 1962; (2) overstating the inventory figures for each taxable year; and (3) failure of the government to account for any loans, gifts, inheritances, recoveries for damages, or any other source of income by taxpayers. The district judge concluded that the government's figures were too inaccurate to allow determination of how much understatement of income, if any, occurred. Based upon this reasoning and upon his finding that taxpayers had used no improper or illegitimate bookkeeping procedures, the trial judge concluded that the returns had been filed in good faith and that the government had failed to show the fraud that would avoid the statute of limitations. Accordingly, the trial judge entered judgment for taxpayers for the full amount of the refund.

The court below recognized that the government may sometimes use unreported and unexplained growth in net worth figures to infer fraud. *See, e. g.*, Sasser v. United States, 5 Cir. 1953, 208 F.2d 535. But the trial judge also held that countervailing circumstances may be sufficiently strong to offset the "badge of fraud" inferable from unreported growth in net worth. The district judge cited the following factors as here outweighing any inference of fraud: the government's inaccuracies in computing taxpayers' net worth growth; taxpayers' limited educational backgrounds;[6] taxpayers' inadvertent use of record-keeping methods that can unintentionally cause errors to be made; taxpayers' good-faith efforts to keep meticulous records; and taxpayers' industrious, family-oriented life style. The trial judge then concluded:

> "When all of these matters are taken into account, the Court is persuaded that the Commissioner has not carried the burden of proof here that these

taxpayers filed these returns with intent to defraud the Government. It is not enough to show, as there has been proof abundant, that there were inadvertent errors, there were miscalculations, there were wrong procedures used. But when all of the evidence is weighed, the Court is driven to the conclusion that the facts here permit only one fair outcome—namely, the [taxpayers] are entitled to recover the taxes they have paid under protest in full."

We agree that all the surrounding circumstances must be considered when fraud is sought to be proved by use of net worth statements. *See, e. g.*, Webb v. Commissioner, 5 Cir. 1968, 394 F.2d 366, 379 (lack of education); Anderson v. Commissioner, 5 Cir. 1957, 250 F.2d 242, 250 (attitude of taxpayer). Additionally, we are aware that the conclusion that the government failed to sustain its burden of proving fraud is a finding of fact that ordinarily will not be disturbed on appeal.

> "Our review of the lower court's findings is, of course, governed by Fed.R.Civ.P. 52(a), and this court cannot set aside those findings unless they are clearly erroneous. A trial court's finding of fact is clearly erroneous if it is without substantial evidence to support it, or the district court misapprehended the effect of the evidence. Lentz v. Metropolitan Life Insurance Co., 428 F.2d 36, 39 (5th Cir., 1970); Gibbs v. Tomlinson, 362 F.2d 394, 397 (5th Cir., 1966)."

Rewis v. United States, 5 Cir. 1971, 445 F.2d 1303, 1304. Nevertheless, on the instant record we are convinced that in reaching his decision the able district judge misconceived the effect of some of the evidence and that a remand for reconsideration and for expanded fact findings is needed in order to "avoid any chance of an unjust result." Gibbs v. Tomlinson, 5 Cir. 1966, 362 F.2d 394,

---

6. Mrs. Lee was originally a native of China, where she received approximately a sixth-grade education. Mr. Lee received an equivalent education in this country.

398. *See also* Mladinich v. United States, 5 Cir. 1967, 371 F.2d 940.

■ Confusion when using the "net worth statements" technique to show the existence of unreported income is perhaps to be expected.[7] The technique requires a two-step process in civil cases. First, the issue of fraud is determined by using the net worth figures. Secondly, the issue of additional tax liability is determined by using the net worth figures. The nuances of tax law regarding use of the net worth technique to show both fraud and tax liability are variegated and sometimes convoluted, but it seems clear that when inaccuracies in the net worth statements are discovered, the proper procedure is to recompute the net worth of the taxpayer at the relevant times. Findings of fact should be made at the outset to determine as precisely as possible how much income, if any, went unreported. Then, using those figures, the district court should determine whether in the light of all surrounding circumstances "fraudulent intent to evade tax liability" can be inferred.

■ It appears from the instant record that in applying this method the trial judge was led astray by the three evidentiary inaccuracies of the government's computations. We set out in a footnote the specific misconceptions of evidence that we believe were made,[8] and we conclude that precision in determining the amount of income understatement is not essential at the first step of the inquiry. Merely demonstrating that substantial amounts of income not found to be tax-exempt were unreported can be enough to establish fraud. *See* Sasser v. United States, *supra*; Brame v. Commissioner, 25 T.C. 824 (1956), aff'd per curiam, 5 Cir. 1958, 256 F.2d 343. This is particularly true when the taxpayer's own record-keeping deficiencies cause the government to rely on approximations of opening net worth, *see* Veino v. Fahs, 5 Cir. 1958, 257 F.2d 364, and approximations of inventory levels, *see* Banks v. Commissioner, 8 Cir. 1963, 322 F.2d 530, 546. Precise figures are needed only when computing tax liability.

■ The general misapprehension of evidence we have here discerned was the giving of almost controlling weight to the discovery of errors in the government's computations. The presence of accounting or mathematical errors

---

7. In permitting the use of net worth statements to prove criminal tax fraud, the Supreme Court stated that "careful study indicates that [the method] is so fraught with danger for the innocent that the courts must closely scrutinize its use." Holland v. United States, 1954, 348 U.S. 121, 125, 75 S.Ct. 127, 130, 99 L.Ed. 150, 159.

8. *(1) Understanding cash on hand at the beginning of 1962:* Because there was evidence that taxpayer kept a large cash hoard at his store and at his home, the trial judge concluded that the opening figures for cash on hand were understated. As discussed in the body of this opinion, upon concluding that such an error exists, the trial judge should make as precise as possible a factual finding of what the correct figure should be.

*(2) Overstating the inventory figures for each taxable year:* Because taxpayers' inventory estimates were apparently based upon retail resale value, rather than cost (here approximately equal to retail minus 20%), the trial judge concluded that the amounts were overstated. Logically, however, a 20% reduction for *each year's* inventory estimates would likely produce little *net* effect. Also, the next step should again have been to calculate the correct amounts.

*(3) Failure of the government to show taxable character of income sources:* The trial judge concluded that lack of government evidence as to the sources of the income inferred weighed against any inference of fraud in failing to report income. But the government does not bear the burden of negativing such an inference. It is up to the taxpayer at least to raise the issue of the exempt character of income that is shown to have been received *after* the opening of the net worth computation period. Cf. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150.

should lead to readjustment of the figures but should not lead ipso facto to the conclusion that the government cannot prevail. Failure to prove the full amount of unreported income alleged to exist does not preclude a finding that there may be a lesser amount of unreported income, which might support an inference of fraud by clear and convincing evidence.

> Finally, it should be remembered that although a "mere omission of reportable income is not of itself sufficient to warrant a finding of fraud in an income tax case . . . [a]s we clearly implied in Bryan v. Commissioner, 5 Cir. 1954, 209 F.2d 822, and in Anderson [v. Commissioner, 5 Cir. 1957, 250 F.2d 242], the *repeated* omission of reportable income is not a *mere* omission. Moreover, an exceptionally large omission is not a *mere* omission."

Kalil v. Commissioner, 5 Cir., 271 F.2d 550, 551 (emphasis original).

Although the government's burden is a heavy one, it is not a millstone of impossible carriage. The extent of the understatement of income may be a mystery, but this is not synonymous with insolvability. We believe the trial court donned the robes of a mathematician and operated under a mistaken theory that he had to find computerized certainty in the understatement before he could conclude fraud. While he must discern a plot, he need not reconstruct every line of the scenario.

On remand the learned trial judge should not expect the government to weigh with exactitude every stone in the lode or account for every penny in the hoard. Substantiality, albeit imprecise, in the understatement of income is sufficient to carry the day. We remand this case to allow the court below to reconsider the evidence in the light of the directions herein contained.

Reversed and remanded with directions.