MICHAEL A. EVERETT, DECEASED, MARIA EVERETT, SUCCESSOR IN INTEREST, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Everett v. Commissioner
Docket No. 45457-86.
United States Tax Court
T.C. Memo 1989-124; 1989 Tax Ct. Memo LEXIS 124; 56 T.C.M. (CCH) 1537; T.C.M. (RIA) 89124; March 27, 1989; As amended April 4, 1989 Richard L. Carico and John M. Bekins, for the petitioner and Maria Everett. Stephen R. Asmussen and Christopher J. Croudace, for the respondent. PARR
MEMORANDUM OPINION PARR, Judge: In his notice of deficiency dated August 29, 1986, respondent determined a deficiency in and additions to the calendar year 1982 Federal income tax of petitioner and his then spouse as follows: Additions to Tax
Deficiency
Sec. 6653(b)(1) [1]
Sec. 6653(b)(2)
Sec. 6661
$ 52,460.00
$ 26,230.00 *
$ 5,246.00
All of the facts have been stipulated and are so found. Rule 122. The stipulation of facts and attached exhibits are incorporated herein by this reference. Michael A. Everett (petitioner) filed a *126 joint Federal income tax return for the calendar year 1982 on behalf of himself and his wife at the time, Son Hui Everett (Son Hui). While the return purportedly bears the signature of Son Hui, she did not sign it. Son Hui's name was apparently subscribed to the return by petitioner without her knowledge or consent. The return was filed with the Internal Revenue Service Center in Fresno, California. The marriage of petitioner and Son Hui was ordered dissolved by the Superior Court of Monterey County, California, on August 12, 1985, effective February 7, 1986. Petitioner filed his petition in this case on November 26, 1986 while residing in Monterey County, California. Son Hui filed a separate petition and eventually stipulated to a decision in docket No. 45471-86 for a deficiency of $ 21,635 and no additions to tax under sections 6661 or 6653(b). Petitioner died on or about July 1, 1987. On January 25, 1988, respondent filed a motion to dismiss this case for lack of prosecution, on the ground that there was no representative or fiduciary authorized to act on behalf of petitioner's estate. On January 29, 1988, we set respondent's motion for hearing at the trial session of *127 the Court scheduled for February 29, 1988 in San Francisco, California. Copies of the order and respondent's motion were served on petitioner's daughter and last known heir, Maria Everett. We ordered the parties and Maria Everett to show cause why respondent's motion to dismiss should not be granted. See Nordstrom v. Commissioner,50 T.C. 30 (1968). When the case was called on February 29, 1988, counsel for respondent and for petitioner and Maria Everett appeared and were heard. At such time, Maria Everett filed a response contesting the imposition of the civil fraud addition against petitioner. She also asked that a decision be entered in this case for a tax deficiency equal to that entered in Son Hui's case, and conceded that the addition under section 6661 applies to such reduced amount for 1982. Under Rule 63(a), "If a petitioner dies, the Court, on motion of a party or the decedent's successor or representative or on its own initiative, may order substitution of the proper parties." We apply local law to determine who has the capacity to be substituted as a party. *128 Rule 60(c); [2]Fehrs v. Commissioner,65 T.C. 346, 349 (1975). Petitioner died without a will. California intestacy law provides that "If the decedent leaves no surviving spouse, but leaves issue, the whole estate goes to such issue * * *." Sec. 222, California Probate Code (West 1956). Petitioner was unmarried at death and Maria Everett is petitioner's only child. As petitioner's sole successor, Maria Everett would have had priority in applying for letters of administration. Sec. 422, California Probate Code (West 1956). [3] See In re Locke's Estate,258 Cal. App. 2d 617 (1968). However, no such application was made, and no fiduciary or other representative has been appointed by any court to act on *129 petitioner's behalf. Members of the family of a deceased taxpayer have normally not been permitted to file petitions in this Court without being duly authorized. Fehrs v. Commissioner, supra. However, in this case the petition was filed before petitioner died. It is well settled that our jurisdiction over a case continues unimpaired by the death of a petitioner. Yeoman v. Commissioner,25 T.C. 589, 593 (1955). Thus, the question is not whether Maria Everett has the capacity to initiate an action in this Court under California law, but whether California law would allow her to be substituted as a party in this case. *130 Rule 385(a) of the California Rules of Civil Procedure (West 1973), provides in relevant part: An action or proceeding does not abate by the death, or any disability of a party, or by the transfer of any interest therein, if the cause of action survives or continues. In the case of the death or any disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his or her representative or successor in interest. * * * [Emphasis supplied.] While the application of this rule is phrased in permissive terms, the right to be substituted for a deceased party is absolute if the cause of action survives death. Pepper v. Superior Court of Los Angeles County,76 Cal. App. 3d 252, 261-262 (1977). The case at bar survived petitioner's death, and Maria Everett is successor in interest to petitioner's property. Accordingly, Maria Everett has the capacity to be substituted for the deceased petitioner in this proceeding. [4] Respondent's motion to dismiss for lack of prosecution was denied by this Court's order dated March 16, 1988. Further, Maria Everett will be ordered substituted *131 as a party. After concessions, counsel for respondent and for Maria Everett stipulated that petitioner was liable for a deficiency of $ 21,635.00 and an addition to tax under section 6661 of $ 5,408.75 for the calendar year 1982. The only issue we must decide is whether petitioner is liable for the addition to tax due to fraud under section 6653(b) for 1982. Petitioner owned and operated a retail store with Son Hui throughout 1982 known as "Sunshine Furniture." The store sold a variety of moderately priced furniture and televisions. Petitioner was in charge of operating the store, making virtually all of the important decisions with respect to store management, including hiring employees, purchasing and advertising. Son Hui would work two or three afternoons a week as the store's bookkeeper. Her duties included reviewing sales and receipts, making bank deposits, computing sales commissions and writing checks. Petitioner supervised *132 Son Hui's activities and would write checks and make bank deposits in her absence. Petitioner did not maintain any formal accounting journals, ledgers or worksheets to compile tax return information. Instead, he would calculate receipts and disbursements by adding up sales invoices and payments entered in a check register. This information would be entered by petitioner onto a so-called "Systemizer", which was provided in blank form by petitioner's Certified Public Accounting firm (CPA firm). Petitioner filled out and gave a completed Systemizer to his CPA firm for purposes of preparing his 1982 return. The tax return preparer at the CPA firm relied solely upon the information contained on the Systemizer, and did not examine any underlying books and records to verify information in completing the 1982 return. The 1982 return showed gross receipts of $ 348,360.00 from Sunshine Furniture. Upon examination of such return, the Internal Revenue Agent asked petitioner for all sales invoices of Sunshine Furniture for 1982. Petitioner cooperated by providing all available sales invoices to the Internal Revenue Agent. The sales invoices provided were numbered but contained breaks *133 in sequence equal to 500 unaccounted-for invoices. Petitioner could offer no explanation when asked about the missing invoices. A total of $ 633,876.00 was deposited into bank accounts of Sunshine Furniture during 1982. This figure represents the correct amount of gross receipts, no portion of which represents nontaxable sources such as gifts, inheritances, loan proceeds or transfers between accounts. Accordingly, petitioner failed to report gross receipts of $ 285,516.00 on his 1982 return. Respondent reduced this figure by $ 35,880.00 for California sales tax, resulting in net unreported gross receipts of $ 249,636.00. This figure was used in both the notice of deficiency issued by respondent to petitioner and in the settlement of the amount of the tax deficiency. The 1982 return showed inventory purchases of $ 236,985.00, but did not include additional purchases of $ 229,823.00, in computing the cost of goods sold for Sunshine Furniture. In his notice of deficiency, respondent increased cost of goods sold from the reported amount of $ 279,619.00 to $ 389,295.00, or 65.1 percent of corrected gross receipts. Respondent computed the cost of goods sold based upon a statistic *134 published in the Almanac of Financial Ratios providing that furniture stores of similar volume have a 65.1 percent ratio of cost of operations to gross receipts. In settlement of the amount of tax deficiency, it was agreed to separately state labor costs of $ 43,334.00 which had been included in costs of goods sold, and to allow a cost of goods sold (without labor costs) equal to 65 percent of the corrected amount of gross receipts. Son Hui held title to two real estate properties used in the operation of Sunshine Furniture during 1982. The first property, used as a retail outlet, was purchased in 1978 for $ 150,000.00 subject to a deed of trust securing a purchase money note payable to the prior owner. The second property, used as a warehouse, was also held subject to a deed of trust securing a purchase money note payable to the prior owner. In 1982, petitioner paid $ 38,400.00 to Son Hui by monthly checks of $ 3,200.00 each. Son Hui would deposit these payments in her personal bank account. The funds would then be used in part to make monthly payments of $ 2,337.20 and $ 661.61 on the notes secured by the retail outlet and the warehouse, respectively. Petitioner titled these *135 properties in Son Hui's name so that she and Maria Everett would be taken care of if he died. The 1982 return included a rent deduction of $ 19,695.00, representing about one-half of the $ 38,400.00 in payments made by petitioner to Son Hui. However, no part of the payments made to Son Hui was included as income on the 1982 return. The full amount of the rent deduction was disallowed in respondent's notice of deficiency and in the settlement of the tax deficiency. However, respondent allowed the deduction of unclaimed depreciation of $ 5,003.00 on the retail outlet property in his notice of deficiency and in settlement of the tax deficiency. We now must decide whether petitioner is liable for the addition to tax due to fraud under section 6653(b) for 1982. The section 6653(b) addition to tax due to fraud applicable to 1982 contains two parts. Section 6653(b)(1) provides for an addition equal to 50 percent of the underpayment of tax if "any part" of such underpayment is due to fraud. Respondent need not prove the precise amount of the underpayment resulting from fraud, but only that *136 some part of the underpayment is attributable to fraud. Lee v. United States,466 F.2d 11, 16-17 (5th Cir. 1972). Section 6653(b)(2) provides for an addition equal to 50 percent of the interest payable under section 6601 "with respect to the portion of the underpayment described in [section 6653(b)(1)] * * * which is attributable to fraud." Unlike section 6653(b)(1), section 6653(b)(2) requires that the portion of the underpayment attributable to fraud be established. Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). *137 Fraud is never presumed, but rather must be established by affirmative evidence. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Respondent may not rely solely on petitioner's failure to carry his burden of proof as to the underlying deficiencies. Habersham-Bey v. Commissioner,78 T.C. 304, 311 (1982). However, fraud may be proved by circumstantial evidence, since direct proof of a taxpayer's intent is rarely available. Spies v. United States,317 U.S. 492 (1943); Stone v. Commissioner,56 T.C. 213, 223-224 (1971). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Petitioner failed to report gross receipts and cost of goods sold from Sunshine Furniture in 1982 of $ 249,636.00 and $ 109,676.00, respectively. These are clearly large omissions on the part of petitioner. However, a substantial understatement of income alone may not be sufficient to establish fraud. Vannaman v. Commissioner,54 T.C. 1011, 1018 (1970). *138 Counsel for Maria Everett argues that the omissions were due to petitioner's inadequate bookkeeping knowledge and practice, which is evidence of negligence rather than fraud. Respondent, on the other hand, argues that petitioner was an "intelligent astute businessman" who knew what he was doing and was thus fraudulent. However, even if we find that petitioner was an intelligent astute businessman, it does not necessarily follow that he was also skilled in accounting and bookkeeping matters. [5] Indeed, there is no evidence in the record that petitioner was qualified by education, training or experience as an accountant or bookkeeper. Petitioner cooperated with respondent's Internal Revenue Agent by supplying all of the numbered sales invoices he had on hand. The Internal Revenue Agent spotted breaks in the sequence of sales invoices, which petitioner could not explain. However, respondent has not shown that the amount of sales represented by the missing invoices makes up any part of the bank deposits not reported as income. Accordingly, respondent has not proven that petitioner intentionally withheld from *139 the Internal Revenue Agent the missing sales invoices in order to conceal corresponding items of unreported income. Further, we will not infer that petitioner was fraudulent merely by his inability to explain why certain sales invoices were missing. Petitioner omitted portions of both gross receipts and costs of goods sold on his 1982 return. We have considered the possibility that petitioner may have intentionally omitted costs of goods sold in order to conceal the omission of related gross receipts. However, had it been petitioner's intent to underreport Sunshine Furniture's gross profit, it would have made more sense to arrive at such figure by reporting a larger amount of gross receipts and all costs of goods sold. [6] Like the unreported gross receipts, we attribute the costs of goods sold which were not deducted to negligent bookkeeping.
Petitioner also claimed a $ 19,695.00 rent expense deduction in 1982 on property used by Sunshine Furniture and owned by Son Hui. This amount represents about half of the payments made by petitioner to Son Hui in such year, and no portion of the rent was reported by Son Hui *140 as income. However, petitioner also failed to claim an allowable depreciation expense deduction on the rented property on behalf of Son Hui. We conclude that these facts merely reflect petitioner's confusion about the proper tax treatment of this item and not fraudulent intent. While there is room for differing interpretations of the fully stipulated facts presented, we are mindful that respondent bears the burden of proving fraud by clear and convincing evidence. At best, respondent has created a mere suspicion of fraud, which is inadequate to carry his burden of proof. See Green v. Commissioner,66 T.C. 538, 550 (1976). Accordingly, we hold that respondent has failed to prove any fraud on the part of petitioner. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section numbers refer to the Internal Revenue Code in effect for the taxable year 1982, and all rule numbers refer to the Rules of Practice & Procedure of this Court. * 50 percent of the interest payable on the portion of the underpayment attributable to fraud.↩
2. RULE 60. PROPER PARTIES; CAPACITY * * * (c) Capacity: * * * The capacity of a fiduciary or other representative to litigate in this Court shall be determined in accordance with the law of the jurisdiction from which he derives his authority. * * *↩
3. Sec. 422. Persons entitled to letters; order of priority (a) Administration of the estate of a person dying intestate must be granted to one or more of the following persons, who are entitled to letters in the following order: (1) The surviving spouse * * *. (2) The children. * * *↩
4. See Beatty v. Commissioner,T.C. Memo. 1980-168↩ (where a comparable Texas Rule of Civil Procedure was applied in a similar context to determine whether a taxpayer's heir had the capacity to be substituted as a party).
5. Revader v. Commissioner,T.C. Memo. 1980-473↩.
6. See Revader v. Commissioner, supra.↩