KENNETH M. BAKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baker v. Commissioner
Docket No. 2559-88
United States Tax Court
T.C. Memo 1991-340; 1991 Tax Ct. Memo LEXIS 389; 62 T.C.M. (CCH) 223; T.C.M. (RIA) 91340; July 25, 1991, Filed *389 Decision will be entered under Rule 155. Robert H. Wyshak, for the petitioner. Philip J. Starr, for the respondent. GERBER, Judge. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioner's 1985 Federal income tax in the amount of $ 52,000, a $ 26,000 addition to tax under section 6653(b)(1), [1] plus an additional amount equal to 50 percent of the interest due on the entire deficiency under section 6653(b)(2), and a $ 13,000 addition to tax under section 6661. The issues presented for our consideration are: 1. Whether petitioner had unreported income for the 1985 taxable year in the amount determined by respondent; 2. Whether petitioner is liable for the addition to tax under section 6653(b) for fraud; 3. Alternatively, whether petitioner is liable for the addition *390 to tax under section 6653(a) for negligence or intentional disregard of the rules and regulations; 4. Whether petitioner is liable for the addition to tax under section 6661 for substantial understatement of income tax; and 5. Whether petitioner is liable for self-employment tax under section 1401. FINDINGS OF FACT The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioner's residence was located in Pacific Palisades, California, at the time his petition in this case was filed. During 1985 and until his arrest on February 11, 1986, for violation of the Food and Drug Act, petitioner resided at 1211 Horn Avenue, Apartments #303 and #304, West Hollywood, California. Petitioner filed a Federal income tax return for the 1985 taxable year with the Internal Revenue Service Center, Fresno, California. Respondent issued a statutory notice of deficiency dated November 19, 1987, for the 1985 taxable year. The deficiency and additions to tax are predicated on respondent's determination that petitioner failed to report income received from the manufacture and distribution of synthetic heroin. Petitioner was a longstanding acquaintance and business *391 associate of Wilton Jones (Jones). Petitioner and Jones formed J&B Investments, a partnership formed to invest in real estate. For several years, Jones distributed various compounds or chemicals which had the effect of PCP or heroin. These chemicals or compounds were manufactured and supplied by petitioner. Around 1981, petitioner informed Jones that he had planned to manufacture a compound from a Chinese formula and wanted Jones to market this compound. Jones rented an apartment on Larabee Avenue to serve as a meeting place and to serve as the location where petitioner would deliver the compound to Jones. Neither Jones nor petitioner resided at the apartment. Petitioner also discussed his intention to manufacture and distribute the compound with Glenn Perry (Perry), an individual he became acquainted with while both were incarcerated in Soledad Prison. Sometime in 1983, petitioner informed Jones that Perry might be willing to assist in marketing the compound. After petitioner informally introduced Perry and Jones over the telephone, Jones and Perry met to discuss marketing the compound manufactured by petitioner. During subsequent meetings, Jones provided Perry with samples *392 of the compound. A market was established for the compound in the summer of 1984. The compound that petitioner manufactured was known as "China White" heroin. China White, synthetic heroin, is the street name for the substance alphamethyl-fentanyl, an analog of fentanyl. During 1984 and 1985, the analog of fentanyl manufactured by petitioner was not a controlled substance. In order to purchase the chemicals necessary to manufacture China White, petitioner used the name L. F. Newell Company on the purchase order forms. When petitioner purchased chemicals, he used specially printed envelopes with the return address L. F. NEWELL CO., 2500 West 6th Street, Los Angeles, Calif. 90057. L. F. Newell Company was petitioner's alter ego. During the 1985 taxable year, petitioner used a telephone exchange service for L. F. Newell Company to add legitimacy to the company. Petitioner signed the fictitious name Michael L. Henderson on the purchase order forms to prevent law enforcement agents from tracing the chemicals to him. Where an individual submits a purchase order form to purchase chemicals which are common in the manufacture of illicit drugs, chemical companies may contact law enforcement. *393 None of the chemicals requested by petitioner on the purchase orders were required under Federal law to be included on a precursor list. [2]
Petitioner obtained business cards in the name of Michael L. Henderson. To further avoid detection of his drug activities, petitioner also obtained two false driver's licenses in the names of Lawrence Frank Newell and Ronald Mathew Harbison. Petitioner developed a sophisticated distribution network to avoid detection from law enforcement officials. Petitioner interacted only with Jones in distributing the compound. Petitioner would bring the compound to the Larabee Avenue apartment and sell it to Jones on a credit basis. Jones, who served as an intermediary, would thereafter sell the compound to Perry for distribution. Jones sold the compound to Perry for $ 25,000 per pound. Petitioner *394 would receive 40 percent of the amount collected by Jones. Payment to petitioner was occasionally made from income derived from the sale of real property by J&B Partnership. During 1984, petitioner received approximately $ 20,000 from Jones representing payment for compounds sold to Jones. This amount was reflected on petitioner's 1984 Federal income tax return as though it was capital gain from the sale of real property owned by the partnership. Perry had regular China White customers, and his biggest customer was Clarence Tomlin. Sometime during 1984, Jones, Perry, and Tomlin entered into an agreement whereby Jones would sell China White directly to Tomlin and Perry would no longer serve as an intermediary. Under this agreement, Perry would receive a percentage of the proceeds. However, Perry's demand for China White increased after the new arrangement was implemented because his other customers increased their demand. Perry and Tomlin continued purchasing China White from Jones during 1985. John Gibbons (Gibbons) assisted Perry in the distribution of China White. Gibbons was compensated $ 50 per week to store China White in his attic and provided Perry with a measured *395 quantity upon request. Until April 1985, Gibbons continued assisting Perry in the distribution of the China White. At that time, Gibbons discontinued his association with China White distribution because of concern about deaths caused by China White. On April 12, 1985, Gibbons contacted Special Agent Charles Hamm of the Drug Enforcement Administration (DEA), Fresno, California, to discuss China White distribution. Gibbons provided Hamm with the names of the individuals involved in the distribution of China White. Hamm initiated a DEA case on the named individuals and became the chief investigating officer. On May 2, 1985, with the cooperation of Gibbons, Hamm arranged to have an undercover DEA agent purchase a half ounce of China White. The DEA agent purchased China White from Perry and Gibbons for $ 2,500. During a telephone conversation on May 24, 1985, Gibbons informed Hamm that Jones was in the Fresno area possibly to deliver China White to Perry. Jones was placed under surveillance and arrested on May 25, 1985, after collecting the proceeds from an earlier sale of the compound. At the time Jones was arrested, he had $ 89,755 in his possession and a loaded .44 caliber *396 revolver on the back seat of his car. The $ 89,755 represented a portion of the proceeds collected from Perry for a purchase of 4 pounds of the compound made during the fall of 1984. [3]
Sometime during 1985, petitioner received $ 40,000 from Jones representing his 40-percent share of the amount collected for the fall of 1984 sale of the compound. Petitioner reported this $ 40,000 on his 1985 Federal income tax return as his distributive share of income from the J&B Partnership. On a supplemental statement to petitioner's 1985 Federal income tax return, petitioner's tax preparer wrote the following: Partnership Income - Schedule E. Taxpayer received payment of $ 40,000.00 from managing partner. The nature of the payment is unknown, and the managing partner is not available to explain the nature of the payment, *397 nor is the taxpayer able to obtain the federal employer identification number from the managing partner. When the required information is available, an amended return will be filed.
In preparing petitioner's tax return, his tax return preparer was not provided with any partnership schedule K-1's. Approximately 1 week after Jones was arrested, Jones agreed to cooperate with Hamm and informed him that petitioner was involved in the manufacture of the compound. Jones also agreed to assist Hamm in an undercover investigation involving petitioner. On June 6, 1985, after Jones was released on bond, he met with petitioner to obtain quantities of the compound while under DEA surveillance. The meeting took place at the Larabee Avenue apartment, and Jones requested 2 pounds of the compound pursuant to Hamm's instructions. Petitioner left the apartment under DEA surveillance and returned in about 2 hours with approximately 8 pounds of the compound whereupon he was arrested by Hamm. During the arrest, $ 600 was seized from petitioner's shirt pocket, and the following items were seized from the trunk of his car: 1) 173.2 grams of marijuana; 2) $ 34,400 in cash; and 3) various white *398 chemical powder substances and yellow granular powders which were tested and determined to be fentanyl analogs. The $ 34,400 was part of the proceeds received from Jones for the fall of 1984 sale of the compound. The chemicals located in the trunk were contained in small cylindrical vials and small jars. Investigators also searched petitioner's apartments located at 1211 Horn Avenue, #303 and #304, West Hollywood, California, and seized the following items: 1) Various books and articles pertaining to the manufacture and synthesis of chemicals; 2) purchase order forms to chemical companies; 3) $ 4,815.90 in cash; 4) various white powder chemical substances, including analogs of fentanyl; 5) various white powder substances, including cocaine and alphamethyl-fentanyl; 6) money bands ranging from $ 100 to $ 10,000 denominations; 7) a respirator mask; 8) various flasks and vials; and 9) heating plates for use in chemical reactions. The chemical compounds found in petitioner's apartments at the time of the seizure were the same chemicals or analogs of fentanyl being sold on the street. Based on his experience as a DEA agent, Hamm classified the equipment in the apartment as a fully *399 operational "clandestine laboratory." A clandestine laboratory is any site where illicit drugs are manufactured through chemical processes and such laboratory is hidden from the public or law enforcement. On May 26, 1987, petitioner pleaded nolo contendere to aiding and abetting in the misbranding of drugs in violation of 21 U.S.C. secs. 331(k) and 333(a) (1984) and 18 U.S.C. sec. 2 (1979). Respondent determined that petitioner had unreported income from the sale of the chemical substances in the amount of $ 199,980. In reconstructing petitioner's income, respondent used the specific item method of income reconstruction. Respondent's revenue agent determined the amount of unreported income by estimating the amount of China White that petitioner sold on a monthly basis. Respondent determined that petitioner sold approximately 8 pounds of China White per month based on the amount of China White in petitioner's possession at the time of his arrest and based on information provided in the DEA reports. Based on information provided in the DEA reports, respondent determined that 1 pound of the compound was selling for $ 15,000. Based on the same reports, in computing petitioner's *400 unreported income, respondent allocated one-third of the proceeds to petitioner, one-third to Jones and one-third to an unidentified third party. In determining petitioner's taxable income, petitioner was allowed a deduction in the amount of $ 99,990 for the cost of goods sold. Because no books and records were provided, respondent made the conservative determination that petitioner was entitled to a cost of goods sold deduction equal to 50 percent of the gross receipts. OPINION We must first decide whether petitioner failed to report income for the 1985 taxable year in the amount determined by respondent. Respondent's deficiency determination is presumptively correct and the burden of proof is on petitioner to show that it is incorrect. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Petitioner contends that the notice of deficiency is not entitled to a presumption of correctness because respondent's determination was arbitrary and erroneous. Respondent argues that petitioner failed to proffer any evidence to show that respondent's determination is incorrect. Gross income includes all income from whatever source derived. Sec. 61; Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 99 L. Ed. 483, 75 S. Ct. 473 (1955). *401 As a general rule, we will not look behind a deficiency notice to examine the basis for the Commissioner's deficiency determination. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). Where, however, it is established that the notice of deficiency is arbitrarily excessive or without any foundation, the burden of going forward with the evidence shifts to respondent. Helvering v. Taylor, 293 U.S. 507, 514-515, 79 L. Ed. 623, 55 S. Ct. 287 (1935); Shriver v. Commissioner, 85 T.C. 1, 3 (1985), affd. without published opinion (7th Cir., Oct. 3, 1986). In cases where respondent's determination of a deficiency is based on alleged unreported income from an illicit activity, the Court of Appeals for the Ninth Circuit [4] has required the Government to come forward with some evidence linking the taxpayer to the illicit activity. Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979), revg. 67 T.C. 672 (1977). Once respondent satisfies this requirement, however, the burden of going forward is upon the taxpayer, who ultimately bears the burden of proving that respondent's determination is in error. *402 Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985). At trial, petitioner testified that he provided Jones with "cutters" and Jones manufactured the chemical compounds. Petitioner also argued that he had rented storage space and stored the chemical compounds belonging to Jones after Jones had been arrested and was simply returning the compounds to Jones at the time of his arrest. We do not find petitioner's testimony to be credible. The record does not establish that Jones was manufacturing the chemical compound. Rather, the facts clearly establish that petitioner purchased the chemicals necessary to manufacture the compound, manufactured the compound, and supplied the compound to Jones. *403 Petitioner stressed at trial that the compound manufactured was not a controlled substance (illegal drug) during the 1985 taxable year. That fact, however, has no bearing on whether petitioner had unreported income during the 1985 taxable year. [5]
In this case, respondent presented sufficient evidence linking petitioner to the manufacture and distribution of China White. Petitioner formed L. F. Newell Company, his alter ego, to prevent detection by law enforcement officials when he purchased chemicals from chemical companies. Petitioner signed the purchase order forms on behalf of L. F. Newell Company by using the fictitious name Michael L. Henderson. Petitioner was arrested after he delivered 8 pounds of China White to Jones while under DEA surveillance. At the time of petitioner's arrest, $ 34,400 in cash *404 was found in the trunk of his automobile along with various powder substances determined to be fentanyl analogs. A search conducted at the time of petitioner's arrest uncovered a fully operational clandestine chemical laboratory at petitioner's Horn Avenue apartments. During this search, law enforcement officials also seized $ 4,815.90 in cash, various white powder chemical substances including analogs of fentanyl, and money bands ranging from $ 100 to $ 10,000 denominations. Accordingly, we hold that respondent's determination is entitled to a presumption of correctness, and petitioner bears the burden of proving that respondent's determination is incorrect. We, therefore, consider whether the amount of income computed by respondent in the notice of deficiency has been shown by petitioner to be erroneous. Taxpayers are required to maintain adequate books and records to enable the taxpayer to accurately reflect income. Sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). Where a taxpayer fails to keep records, respondent may reconstruct the amount of any unreported income. Holland v. United States, 348 U.S. 121, 130-132, 99 L. Ed. 150, 75 S. Ct. 127 (1954); *405 Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). The reconstruction need only be reasonable in light of all surrounding facts and circumstances. Giddio v. Commissioner, 54 T.C. 1530 (1970); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). In this case, petitioner filed a 1985 Federal income tax return but failed to maintain books and records for the 1985 taxable year. "The party bearing the burden of proof must suffer the consequences of an inadequate record." Petzoldt v. Commissioner, 92 T.C. 661, 687 n.21 (1989). In reconstructing petitioner's income, respondent used the specific item method of income reconstruction. This method, an indirect method of income reconstruction, consists of evidence of specific amounts of income received by a taxpayer during a taxable year which were not reported on the taxpayer's return. This Court has approved of the specific item method of income reconstruction. See Estate of Beck v. Commissioner, 56 T.C. 297, 361 (1971). [6]
*406 Respondent determined that petitioner's gross receipts from the sale of 8 pounds of the compound during 1985 totaled $ 199,980. This determination was based on a finding that petitioner sold on the average 8 pounds of the compound per month. We believe that petitioner and his associates continued distributing the compound during 1985. Our conclusion is premised on several facts. First, petitioner had large quantities of compound in his possession at the time of his arrest. Secondly, on May 2, 1985, a DEA agent purchased a half ounce of the compound for $ 2,500. Finally, Gibbons testified that the compound continued to be sold during 1985. The evidence, however, does not support monthly distributions of 8 pounds. Jones testified that petitioner provided him with 4 pounds of the compound during the fall of 1984 and an additional 1-1/2 pounds of the compound at some other time during 1984. Perry testified that he purchased 3 or 4 pounds of the compound from Jones a month during 1984. Based on the testimony provided at trial, along with other evidence in the record, we find that petitioner sold 4 pounds of the compound a month during 1985. A market for the compound was not *407 established until the summer of 1984. During the early stages of distribution, it is not unlikely that the parties sold approximately 4 pounds of the compound over a 3-month period, and after the parties became fully established in the distribution of the compound and the market grew, they were able to distribute 4 pounds per month. We must also decide whether the $ 15,000 price per pound used by respondent in his determination was the correct value and whether respondent properly allocated one-third of that amount to petitioner. The evidence in the record shows that 1 pound of the compound sold for $ 25,000 rather than $ 15,000. Petitioner supplied Jones with 4 pounds of the compound during the fall of 1984. Sometime later, Jones received $ 100,000 from Perry for the 4 pounds of compound, $ 25,000 per pound. There is no evidence in the record which shows that one-third of the proceeds collected by Jones was allocated to petitioner and one-third to an unidentified third party. There is also no evidence which shows that petitioner allocated one-third of the amount he collected to a third-party. Petitioner received $ 40,000 (40 percent) from Jones representing his portion of *408 the proceeds from the fall of 1984 sale and reported the entire $ 40,000 on his Federal income tax return as his distributive share of partnership income. Accordingly, we find that petitioner received 40 percent of the proceeds collected from the sale of the compound. We conclude that petitioner's receipts from the sale of 4 pounds of the compound during 1985 was $ 200,000. [7] Because petitioner reported $ 40,000 of his gross receipts, petitioner's unreported income from the sale of the chemical substances totaled $ 160,000. $  25,000
selling price per pound
X     .40
petitioner's share of each pound sold
$  10,000 X       4
number of pounds sold each month
$  40,000 X       5
months petitioner sold compound prior to arrest
$ 200,000
gross receipts
We note that petitioner offered no evidence regarding the computation of the cost of goods sold deduction. In determining petitioner's deficiency, respondent concluded that *409 petitioner was entitled to cost of goods sold deduction in the amount of 50 percent of gross receipts. Because petitioner did not present evidence on this matter, we sustain respondent's determination. Therefore, petitioner will be entitled to a cost of goods sold deduction in the amount of $ 100,000. Respondent determined that petitioner is liable for additions to tax under section 6653(b)(1) and (2) for fraudulently understating his income for taxable year 1985. Section 6653(b)(1) provides that if any part of the underpayment is due to fraud, there will be an addition to tax equal to 50 percent of the entire underpayment. The addition to tax imposed by section 6653(b)(2) applies only to the portion of the underpayment that is attributable to fraud. Respondent has the burden of proving that a portion of an underpayment is due to fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). This burden may be met by showing that an underpayment existed and that petitioner intended to evade a tax which he knew or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the *410 collection of taxes. McGee v. Commissioner, 61 T.C. 249 (1973), affd. 519 F.2d 1121 (5th Cir. 1975); Acker v. Commissioner, 26 T.C. 107 (1956), mod. 258 F.2d 568 (6th Cir. 1958), affd. 361 U.S. 87, 4 L. Ed. 2d 127, 80 S. Ct. 144 (1959). It is not necessary that respondent prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax is attributable to fraud. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Petzoldt v. Commissioner, supra at 699. The existence of fraud is a question of fact which must be resolved upon consideration of the record as a whole. Gajewski v. Commissioner, 67 T.C. 181, 191 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). To meet his burden, respondent cannot simply rely upon petitioner's failure to carry his burden of proof as to the underlying deficiencies. Habersham-Bey v. Commissioner, 78 T.C. 304, 312 (1982); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). Fraud is not to be imputed *411 or presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, supra at 108. However, fraud may be proved by circumstantial evidence because direct proof of intent is rarely available. Spies v. United States, 317 U.S. 492, 87 L. Ed. 418, 63 S. Ct. 364 (1943); Rowlee v. Commissioner, supra at 1123. The intent to conceal or mislead may be inferred from a pattern of conduct. See Spies v. United States, supra at 499. A pattern of consistent underreporting of income when accompanied by other circumstances showing an intent to conceal justifies an inference of fraud. Holland v. United States, 348 U.S. 121, 137, 99 L. Ed. 150, 75 S. Ct. 127 (1954); Otsuki v. Commissioner, supra at 107. Additional indicia of fraud include: Maintaining inadequate records, failing to cooperate with tax authorities, engaging in illegal activities, dealing in large amounts of cash and making implausible and inconsistent explanations of behavior, and making false and inconsistent statements to revenue agents. See Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), *412 affg. a Memorandum Opinion of this Court; Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980). This Court is satisfied that respondent has shown by clear and convincing evidence an underpayment of tax for the 1985 taxable year and that a portion of the understatement of income in 1985 was due to fraud. Petitioner filed false 1984 and 1985 Federal income tax returns which reflected income received from his distributive share of partnership income from the sale of real property rather than reflecting income from the sale of the compound. For example, petitioner received $ 20,000 from Jones for the sale of the compound. Petitioner testified that "This $ 20,000 which he gave me was from a sale of a house, but essentially it was from the compounds, from the compounds." Petitioner further testified: "Well, the check actually came through the banks from the sale of a house. But when [Jones] gave me the money, it was because I had been pestering him about the fact that I wanted some money out of this and he said well wait until I sell the house. And then he gave me the money from the house. But the partnership includes either compounds or real estate." Petitioner *413 failed to maintain adequate books and records for the 1985 taxable year. Safra v. Commissioner, 30 T.C. 1026 (1958). [8] Petitioner's testimony was to some extent implausible or inconsistent. He testified that the only fictitious name he used was L. F. Newell. Later during his testimony, petitioner testified that he was known by the name "Mitchell or something." Petitioner subsequently admitted to using the name Michael Henderson. Petitioner testified that he did not supply the compound to Jones during 1985. At the time petitioner was arrested, he had $ 34,400 in cash located in the trunk of his automobile. Petitioner refrained from depositing this cash into his bank accounts because he was aware of the requirement that financial institutions file a currency transaction report for deposits of $ 10,000 or more. We therefore conclude that petitioner is liable for the addition to tax under section 6653(b) for fraud.[9]
*414 The next issue is whether petitioner is liable for the addition to tax under section 6661(a) for the substantial understatement of income tax. Respondent determined that there was a substantial understatement of income tax and that petitioner was liable for a 25-percent addition to tax. Petitioner has the burden of proving that the addition to tax was erroneously determined by respondent. Rule 142(a). A substantial understatement exists where the amount of the understatement of income tax for the year exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Sec. 6661(b)(1). Petitioner presented no arguments at trial or on brief relating to the section 6661 addition to tax. Petitioner's income tax liability will be computed under Rule 155 in accordance with this opinion. Accordingly, we hold that the section 6661 addition to tax applies if the Rule 155 computation discloses deficiencies that warrant imposition of the addition. The last issue is whether petitioner is liable for self-employment tax. A self-employment tax is imposed on income earned from self-employment. Sec. 1401. Respondent determined that petitioner was liable for self-employment *415 tax in the amount of $ 4,673. Petitioner has the burden of proving that the determination is erroneous. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Petitioner contends that he is not liable for self-employment tax because he was not involved in an ongoing business activity but merely engaged in a one-time transaction. The facts show that petitioner manufactured and distributed compounds through his intermediary as an ongoing business enterprise. Since petitioner presented no other evidence or arguments on this issue, we sustain respondent's determination. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue. All Rule references are to the Tax Court's Rules of Practice and Procedure.↩
2. The precursor list is a list of controlled substances that require triplicate filings with the Government when they are dispensed and require special permits to obtain the chemicals.↩
3. Jones testified that he thought he had collected $ 100,000 from Perry rather than $ 89,755. It is unclear whether Jones miscounted the money or spent a portion of the proceeds prior to his arrest.↩
4. Since this case is appealable to the Ninth Circuit, barring a stipulation to the contrary, we will follow decisions of the Ninth Circuit. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940, 30 L. Ed. 2d 254, 92 S. Ct. 284↩ (1971).
5. See, e.g., Guinan v. Commissioner, T.C. Memo 1991-190 (unreported income from law practice); Way v. Commissioner, T.C. Memo 1990-590↩ (underreported tip income).
6. See also Butler v. Commissioner, T.C. Memo 1990-194↩.
7. This Court computed petitioner's gross receipts for 1985 in the following manner:↩
8. See also Barbieri v. Commissioner, T.C. Memo 1991-175; Slear v. Commissioner, T.C. Memo 1987-395↩. 9. Because we have found petitioner liable for the addition to tax for fraud, we need not address respondent's alternate argument that petitioner is liable for the addition to tax under section 6653(a) for negligence.↩